## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

KATHERINE P. ROBINSON

Case No.:    18CV9646

18PA1377

Plaintiff

VS

ALTERRA HOME LOANS
ROUNDPOINT MORTGAGE SERVICING CORP
RUSHMORE LOAN MANAGEMENT SERVICE
FIRST GRARANTY MORTGAGE CORP
VENTA FINANCIAL GROUP INC

Defendant

# SUMMONS

### TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____1_____ day of _____october_____, 20__18__.

Honorable Debra DeBerry
Clerk of Superior Court

By_____B Wayne Scott_____

Deputy Clerk

<u>E-Filing and E-Service</u>

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

# EXHIBIT A

FILED 10/1/2018 2:47 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

JJ

## DEKALB COUNTY SUPERIOR COURT

## STATE OF GEORGIA

Katherine P. Robinson
_____
      Plaintiff

VS
ALTERRA HOME LOANS
VENTA FINANCIAL GROUP INC
FIRST GUARANTY MORTGAGE CORPORATION
ROUNDPOINT MORTAGE SERVICING CORP
RUSHMORE MORTAGE SERVICING LLC
_____

      Defendants

CIVIL ACTION FILE NO. 18CV96046-6

18PA1377

COMPLAINT FOR:
DECLARATORY RELIEF
VIOLATION OF TILA
VIOLATION OF RESPA
BREACH OF FIDUCIARY DUTY
CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALINGS
UNCONSCIONABILITY
MISAPPROPRIATION OF FUNDS
FRAUD
RECESSION

## AMENDED COMPLAINT

COMES NOW Plaintiff Katherine P. Robinson and file this Complaint against Defendants: Alterra Home Loans, Venta Financial Group Inc., First Guaranty Mortgage Corporation, Roundpoint Mortgage Servicing Corporation, and Rushmore Loan Management Services LLC.

## INTRODUCTION

This is an action for actual and statutory damages filed by the Plaintiff for violations of the Regulations enacted pursuant thereto by the Consumer Financial Protection Bureau ("CFPB") and statutory damages filed by the Plaintiff for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq. ("RESPA"), and the Truth in Lending Act.

This action is filed to enforce the Regulations published in 12 CFR §§ 1024 and 1026 including, as applicable, amendments that became effective on January 10, 2014. Specifically, 12 CFR §§ 1024.35, 1024.36, 1026.20 1024.21.

The regulations as they existed prior to the January 10, 2014 amendments apply to the claim under 12 CFR § 1024.21 for failure to properly and timely notice transfer of servicing rights.

This is also an action brought by the consumer Plaintiff for money damages pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., which prohibits abusive, deceptive and unfair debt collection practices and other tort claims. Also an action brought by the consumer Plaintiff for money damages pursuant to the Uniform Commercial Code UCC 7-507

5. This is also an action brought by the Plaintiff to recover damages for breach of contract and the implied covenant of good faith and fair dealing in the trust deed and promissory note, as well as an action for tortious violation of the covenant of good faith and fair dealing. Exhibit 1,2

## PARTIES

Plaintiff Katherine P. Robinson is a natural person, a widow, a first-generation American, and is the owner and resident of real property

commonly known as and located at 4085 Weelaunee Road, Ellenwood, (Dekalb County) Georgia 30294 (the "Property"). **Exhibit 3**

Plaintiff is the borrower with an obligation to repay on a note (the "Note") and deed of trust (the "Deed of Trust", "Security Deed") that secures the Note against the Property (collectively referred to as the "Loan").

Plaintiff was and is at all times pertinent to the allegations made herein a person, natural person, and consumer within the meaning of RESPA, 12 U.S.C. § 2602(5), TILA 15 U.S.C. § 1602(i), FDCPA 15 U.S.C. § 1692a(3),.

Defendants Alterra Home Loans ("Alterra") 515 E. Crossville Rd, Suite 300, Roswell, GA 30075, Venta Financial Group Inc. 1300 S. Jones Blvd. Las Vegas, NV 89146, First Guaranty Mortgage Corp. P.O. BOX 19409, Charlotte, NC 28219, RoundPoint Mortgage Servicing Corp., P.O. BOX 39575, Solon, OH 44139, Rushmore Loan Management P.O.BOX 814529 Dallas, TX 75381.

Defendants Alterra Home Loans, Venta Financial Group, First Guaranty Mortgage Corp., Roundpoint Mortgage Service Corp Rushmore Loan Management. does business in Georgia.

Defendants Alterra Home Loans, Venta Financial Group, First Guaranty Mortgage Corp., Roundpoint Mortgage Service Corp Rushmore Loan

Management. uses the instrumentality of interstate commerce—such as using an interstate phone system to make long distance calls and the mails in a business—the principal purpose of which is the collection of debt.

Defendants Alterra Home Loans, Venta Financial Group, First Guaranty Mortgage Corp., Roundpoint Mortgage Service Corp Rushmore Loan Management. uses the instrumentality of interstate commerce to regularly collect or attempt to collect, directly or indirectly, debts owed to or due—or asserted to be owed to or due—others.

On information and belief, Defendants Alterra Home Loans, Venta Financial Group, First Guaranty Mortgage Corp., Roundpoint Mortgage Service Corp Rushmore Loan Management. is and was a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) at all times relevant to the allegations set forth herein.

Defendants Alterra Home Loans, Venta Financial Group, First Guaranty Mortgage Corp., Roundpoint Mortgage Service Corp. Rushmore Loan Management. was and is a person within the meaning of RESPA, 12 U.S.C. § 2602(5) at all times relevant to the allegations set forth herein.

Upon information and belief, Defendants Alterra Home Loans, Venta Financial Group, First Guaranty Mortgage Corp., Roundpoint Mortgage Service Corp. Rushmore Loan Management. became the servicer of the Loan,

as of August or September of 2015, and was and is a mortgage loan servicer pursuant to RESPA, 12 U.S.C. § 2602(5), TILA 15 U.S.C. § 1602(cc)(7).

At the time Defendants Alterra Home Loans, Venta Financial Group, First Guaranty Mortgage Corp., Roundpoint Mortgage Service Corp. Rushmore Loan Management. became the servicer of the Loan, the loan was not in default.

The Loan is a "federally related mortgage loan" as such term is defined by RESPA 12 U.S.C. § 2602(1) and through 12 C.F.R. § 1024.2(b).

## JURISDICTION

The transactions and events which are the subject mater of the Complaint all occurred within the County of Dekalb, State of Georgia.

The Subject Property 4085 Weelaunee Rd., Ellenwood 30294 is located within the County of Dekalb, State of Georgia.

## FACTUAL ALLEGATIONS

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

On or about July 10, 2015, Plaintiff made an offer on property at 4085 Weelaunee Rd., Ellenwood, Georgia and deposited $5,000 earnest money. The offer was accepted.

On or about July 14,2015, Plaintiff enlisted the assistance of Kendra Seck, Loan Officer #NMLS 213389 and Eagle Home Mortgage, 80 Vinings Drive Suite 96, McDonough, GA 30352 in securing the financing of the afore mentioned property. Subsequently on or about July 20,2015 Ramon Daniels, State Certification #CR4301 appraised the property for $100,000. The appraisal eliminated a 6th room. Exhibit 4,5,6,7,8,9

The Loan Officer, moved to Alterra Home Loans securing financing for an FHA 203K, primary dwelling home, with Venta Financial Group. Addressing the Plaintiff's concerns about the Good Faith Estimate and Settlement Statement both Alterra Home Loans and their affiliate Venta Financial Group separately assured the Plaintiff that the $1,312.59 Mortgage Insurance was held back by HUD and returned after evidence of a faithful payment history and the MIP listed was tentative and not listed as part of reserves on the Settlement Statement which indicated she would not be charged unless her mortgage payment history warranted. Evidence: Exhibits: 10,13.  The above occurrences are shown to be violations as listed below:

On or about August 29, 2015 an FHA AMENDATORY CLAUSE with a valuation of $83,339 was sent to Plaintiff. Prior to closing an appraisal with pictures was sent this time valued at $79,000, still no mention of a 6th room nor inner pictures of same as required Exhibits 5,8

On or about September 21, 2015, to address the Plaintiff's concerns regarding a charge to her for the delays of others, all parties agreed

that a $1,500 per diem would be split between the Plaintiff's agent and the lender. Evidence: Exhibits 11,12

On or about September 23, 2015 plaintiff executed a promissory note and security agreement, which transaction is a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z § 226.2.6 A true and accurate copy of the combined note and security agreement are attached hereto as Exhibits 1,2 and are hereby incorporated by reference

The security agreement lists as collateral the dwelling purchased with the proceeds of this loan. Exhibit 10

To ensure she kept the mortgage payment history "necessary" to avoid MIP charges, as she was informed, Plaintiff started paying her mortgage a month ahead of schedule. As confirmation of this no MIP charges were deducted.   Evidence: Exhibits 10,13,15

The Questions Plaintiff had about: where to send money unused either to escrow or to principal, A Notice she received calling in the note from South Star Bank, the settlement of the 203K repairs, the 203 K consultant and a forthcoming reduction of principal were then all referred and ultimately went unanswered. A year's end statement was forth coming, and it would answer all was a comment Mr. Zamudio made before suggesting he would call her back. He never called or accepted her calls.   Exhibits 22

On or about January 27,2016 First Guaranty Mortgage Corporation sent Plaintiff An improper, deceptive and inaccurate Disclosure indicating Guaranty Mortgage was servicer of Plaintiff's mortgage prior to February 15, 2016. There was no disclosure to Plaintiff from Venta Financial mentioning Guaranty Mortgage as having any financial relationship with her. A letter dated on or before February 1, 2016 from Venta Financial is a Notice of Transfer to Roundpoint Mortgage Servicing Corporation. Exhibit 22,23,24

Roundpoint continued servicing based on false and manufactured accounting disavowing any knowledge of the extra monthly mortgage payment $1,500 per diem error and now charging an MIP. As a consequence of no year's end accounting as Plaintiff was promised and Roundpoint's compounding errors she contacted the CFPB who referred her to the FDIC and suggested she contact an attorney. Exhibit 11,12

Roundpoint and Venta continued to violate TILA-RESPA Exhibit 18,19,20 25,26,27,28

§1024.17   Escrow accounts.

(b) *Definitions.* As used in this section:

*Deficiency* is the amount of a negative balance in an escrow account. As noted in §1024.17(f), if a servicer advances funds for a borrower, then the servicer must perform an escrow account analysis before seeking repayment of the deficiency.

*Disbursement date* means the date on which the servicer actually pays an escrow item from the escrow account.

*Escrow account* means any account that a servicer establishes or controls on behalf of a borrower to pay taxes, insurance premiums (including flood insurance), or other charges with respect to a federally related mortgage loan, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay. The definition encompasses any account established for this purpose, including a "trust account", "reserve account", "impound account", or other term in different localities. An "escrow account" includes any arrangement where the servicer adds a portion of the borrower's payments to principal and subsequently deducts from principal the disbursements for escrow account items. For purposes of this section, the term "escrow account" excludes any account that is under the borrower's total control.

(c) *Limits on payments to escrow accounts.* (1) A lender or servicer (hereafter servicer) shall not require a borrower to deposit into any escrow account, created in connection with a federally related mortgage loan, more than the following amounts:

(3) *Subsequent escrow account analyses.* For each escrow account, the servicer must conduct an escrow account analysis at the completion of the escrow account computation year to determine the borrower's monthly escrow account payments for the next computation year, subject to the limitations of paragraph (c)(1)(ii) of this section. In conducting the escrow account analysis, the servicer must estimate the disbursement amounts according to

paragraph (c)(7) of this section. Pursuant to paragraph (k) of this section, the servicer must use a date on or before the deadline to avoid a penalty as the disbursement date for the escrow item and comply with any other requirements of paragraph (k) of this section. The servicer must use the escrow account analysis to determine whether a surplus, shortage, or deficiency exists, and must make any adjustments to the account pursuant to paragraph (f) of this section. Upon completing an escrow account analysis, the servicer must prepare and submit an annual escrow account statement to the borrower, as set forth in paragraph (i) of this section.

(f) *Shortages, surpluses, and deficiencies requirements*—(1) *Escrow account analysis*. For each escrow account, the servicer shall conduct an escrow account analysis to determine whether a surplus, shortage or deficiency exists.

(2) *Surpluses*. (i) If an escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower if the surplus is greater than or equal to 50 dollars ($50). If the surplus is less than 50 dollars ($50), the servicer may refund such amount to the borrower, or credit such amount against the next year's escrow payments.

(4) *Deficiency.* If the escrow account analysis confirms a deficiency, then the servicer may require the borrower to pay additional monthly deposits to the account to eliminate the deficiency.

(ii) If the deficiency is greater than or equal to 1 month's escrow payment, the servicer may allow the deficiency to exist and do nothing to change it

or may require the borrower to repay the deficiency in two or more equal monthly payments.

(i) *Annual escrow account statements*. For each escrow account, a servicer shall submit an annual escrow account statement to the borrower within 30 days of the completion of the escrow account computation year. The servicer shall also submit to the borrower the previous year's projection or initial escrow account statement. The servicer shall conduct an escrow account analysis before submitting an annual escrow account statement to the borrower.

(1) *Contents of annual escrow account statement*. The annual escrow account statement shall provide an account history, reflecting the activity in the escrow account during the escrow account computation year, and a projection of the activity in the account for the next year. In preparing the statement, the servicer may assume scheduled payments and disbursements will be made for the final 2 months of the escrow account computation year. The annual escrow account statement must include, at a minimum, the following (the items in paragraphs (i)(1)(i) through (i)(1)(iv) must be clearly itemized):

(i) The amount of the borrower's current monthly mortgage payment and the portion of the monthly payment going into the escrow account;

(ii) The amount of the past year's monthly mortgage payment and the portion of the monthly payment that went into the escrow account;

(iii) The total amount paid into the escrow account during the past computation year;

(iv) The total amount paid out of the escrow account during the same period for taxes, insurance premiums, and other charges (as separately identified);

(v) The balance in the escrow account at the end of the period;

(vi) An explanation of how any surplus is being handled by the servicer;

(vii) An explanation of how any shortage or deficiency is to be paid by the borrower; and

(viii) If applicable, the reason(s) why the estimated low monthly balance was not reached, as indicated by noting differences between the most recent account history and last year's projection. Public Guidance Documents entitled "Annual Escrow Account Disclosure Statement—Format" and "Annual Escrow Account Disclosure Statement—Example" set forth an acceptable format and

(4) *Short year statements*. A servicer may issue a short year annual escrow account statement ("short year statement") to change one escrow account computation year to another. By using a short year statement a servicer may adjust its production schedule or alter the escrow account computation year for the escrow account. methodology for conveying this information.

(4) *Short year statements*. A servicer may issue a short year annual escrow account statement ("short year statement") to change one escrow account

computation year to another. By using a short year statement a servicer may adjust its production schedule or alter the escrow account computation year for the escrow account.

(f) *Shortages, surpluses, and deficiencies requirements*—(1) *Escrow account analysis.* For each escrow account, the servicer shall conduct an escrow account analysis to determine whether a surplus, shortage or deficiency exists.

(ii) The servicer may conduct an escrow account analysis at other times during the escrow computation year. If a servicer advances funds in paying a disbursement, which is not the result of a borrower's payment default under the underlying mortgage document, then the servicer shall conduct an escrow account analysis to determine the extent of the deficiency before seeking repayment of the funds from the borrower under this paragraph (f).

(2) *Surpluses.* (i) If an escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower if the surplus is greater than or equal to 50 dollars ($50). If the surplus is less than 50 dollars ($50), the servicer may refund such amount to the borrower, or credit such amount against the next year's escrow payments.

On or about September 21, 2015, to address the Plaintiff's concerns regarding a charge to her for the delays of others, all parties agreed that a $1,500 per diem would be split between the Plaintiff's agent and the lender. Evidence: **Exhibits 11,12**

The TILA-RESPA Rule states that charges for property taxes and other charges paid to third-party service providers for services not required by the creditor, even those paid to affiliates of the creditor, are "variations permitted for certain charges" or charges that are not subject to a tolerance limitation so long as they are based on the best information reasonably available at the time of disclosure and they are bona fide charges. (§ 1026.19(e)(3)(iii)(E); Comments 19(e)(3)(iii)-3 and -4. For example, owner's title insurance that is not required by the creditor will be a variation permitted charge that is not subject to tolerance as long as it is disclosed as optional.

[ !!Charges to buyer's agent and lender due to their responsibility in delays!!  (see dated September 21,2015 and letter to Atty Rachel Scott from Alterra Home Loans dated September 13, 2017)]

[ !!The title insurance required was not disclosed as optional and is therefore subject to tolerance.]

## 8. Revisions to Loan Estimates

8.1 When are revisions permitted for Loan Estimates? Generally, a creditor may revise a Loan Estimate at any time before it provides the Closing Disclosure. A revised Loan Estimate may be issued to reset tolerances for purposes of determining good faith or to update information for informational purposes. (Comment 19(e)(3)(iv)-4). Regardless of whether a revised Loan Estimate is used for resetting tolerances or for informational purposes, all of the disclosures on a

revised Loan Estimate must be based on the best information reasonably available at the time the revised disclosure is provided. (Comment 19(e)(3)(iv)-5) **Exhibit 27,28**

[ !!The loan estimate was not revised to show the charges levied on the buyer's agent and the lender were not the buyer's charges! **Exhibit 11,12**

The creditor must ensure that the consumer receives the revised Loan Estimate no later than four business days prior to consummation. The creditor is permitted to rely on the charges disclosed in a revised Loan Estimate to reset tolerances in more limited circumstances.

Creditors generally are bound by the amounts in the Loan Estimate provided within three business days of the application. Creditors are permitted to provide and use revised estimates for purposes of determining good faith and resetting tolerances only in certain specific circumstances:

Changed circumstances that occur after the Loan Estimate is provided to the consumer cause an estimated charge to increase more than is permitted under the TILA-RESPA Rule (§ 1026.19(e)(3)(iv)(A));

Changed circumstances affect the consumer's creditworthiness or the value of the property securing the loan and cause a consumer to be ineligible for an estimated charge previously disclosed to the consumer (§ 1026.19(e)(3)(iv)(B));

Changes to the credit terms or the settlement are requested by the consumer and those changes cause an estimated charge to increase (§ 1026.19(e)(3)(iv)(C));

The interest rate was not locked when the Loan Estimate was provided, and locking the rate causes the points, lender credits and any other interest rate dependent charges or terms to change (§ 1026.19(e)(3)(iv)(D));

The consumer indicates an intent to proceed with the transaction more than 10 business days after the Loan Estimate was originally provided, so long as the creditor has not established a longer expiration period (§ 1026.19(e)(3)(iv)(E); Comment 19(e)(3)(iv)(E)-2); or

When creditors revise estimated charges for these reasons, a creditor may determine good faith based on increased charges only to the extent actually justified by the reason for the revision. (Comment 19(e)(3)(iv)-2). Creditors must also retain records demonstrating compliance with the requirements of § 1026.19(e), in order to comply with the record retention requirements of the TILA-RESPA Rule. (Comment 19(e)(3)(iv)-3

Revisions can also be provided on the Closing Disclosure. For information about providing Closing Disclosures, including providing a Closing Disclosure to reset tolerances, see sections 10, 11, and 12 below. 8.2 What is a "changed circumstance"? (§ 1026.19(e)(3)(iv)(A)) A changed circumstance for purposes of providing a revised estimate and resetting tolerances is:

An extraordinary event beyond the control of any interested party or other unexpected event specific to the consumer or transaction (§ 1026.19(e)(3)(iv)(A)(1));

Information specific to the consumer or transaction that the creditor relied upon when providing the disclosures and that was inaccurate or changed after the disclosures were provided (§ 1026.19(e)(3)(iv)(A)(2)); or

New information specific to the consumer or transaction that the creditor did not rely on when providing the disclosures. (§ 1026.19(e)(3)(iv)(A)(3)) 8.3 What are changed circumstances that affect settlement charges? A changed circumstance affects settlement charges if it causes an estimated charge to increase by more than the applicable tolerance or, in the case of estimated charges subject to the 10% cumulative tolerance, causes the sum of those charges to increase by mcre than the 10% tolerance. (§ 1026.19(e)(3)(iv)(A); Comment 19(e)(3)(iv)(A)-1) Examples of changed circumstances affecting settlement costs include (Comment 19(e)(3)(iv)(A)-2):

A natural disaster, such as a hurricane or earthquake, damages the property or otherwise results in additional closing costs.

The creditor disclosed a charge for title insurance, but the title insurer goes out of business during underwriting

New information not relied upon when providing the charges is discovered, such as a neighbor of the seller filing a claim contesting the boundary of the property to be sold. NOTE: Creditors are not required to collect all six pieces of information constituting the consumer's application—i.e., the consumer's name, monthly income, social security number to obtain a credit report, the property address, an estimate of the value of the property, or the mortgage loan amount sought—prior to issuing the

Loan Estimate. However, creditors are presumed to have collected this information prior to providing the Loan Estimate and may not later collect it and claim a changed circumstance. For example, if a creditor provides a Loan Estimate prior to receiving the property address from the consumer, the creditor cannot subsequently claim that the receipt of the property address is a changed circumstance. (Comment 19(e)(3)(iv)(A)-3)

TRUTH IN LENDING PART 1026 (REGULATION Z )

§ 1026.17 General disclosure requirements.

(b) Time of disclosures. The creditor shall make disclosures before consummation of the transaction.

(c) Basis of disclosures and use of estimates. (1) The disclosures shall reflect the terms of the legal obligation between the parties.

(2)(i) If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer and shall state clearly that the disclosure is an estimate.

(ii) For a transaction in which a portion of the interest is determined on a per-diem basis and collected at consummation, any disclosure affected by the per-diem interest shall be considered accurate if the disclosure is based on the information known to the creditor at

the time that the disclosure documents are prepared for consummation of the transaction. Exhibit 11,12

§1026.19  Certain mortgage and variable-rate transactions.

(a) *Mortgage transactions subject to RESPA*—(1)(i) *Time of disclosures.* In a reverse mortgage transaction subject to both §1026.33 and the Real Estate Settlement Procedures Act (12 U.S.C. 2601 *et seq.*) that is secured by the consumer's dwelling, the creditor shall provide the consumer with good faith estimates of the disclosures required by §1026.18 and shall deliver or place them in the mail not later than the third business day after the creditor receives the consumer's written application.

(2) *Waiting periods for early disclosures and corrected disclosures.* (i) The creditor shall deliver or place in the mail the good faith estimates required by paragraph (a)(1)(i) of this section not later than the seventh business day before consummation of the transaction.

(e) *Mortgage loans—early disclosures—* (1) *Provision of disclosures—* (i) *Creditor.* In a closed-end consumer credit transaction secured by real property or a cooperative unit, other than a reverse mortgage subject to §1026.33, the creditor shall provide the consumer with good faith estimates of the disclosures in §1026.37.

(ii) *Mortgage broker.* (A) If a mortgage broker receives a consumer's application, either the creditor or the mortgage broker shall provide a consumer with the disclosures required under paragraph (e)(1)(i) of this section in accordance with paragraph (e)(1)(iii) of this section. If the mortgage broker provides the required disclosures, the mortgage broker shall

comply with all relevant requirements of this paragraph (e). The creditor shall ensure that such disclosures are provided in accordance with all requirements of this paragraph (e). Disclosures provided by a mortgage broker in accordance with the requirements of this paragraph (e) satisfy the creditor's obligation under this paragraph (e).

(e) *Mortgage loans—early disclosures—*(1) *Provision of disclosures—*(i) *Creditor.* In a closed-end consumer credit transaction secured by real property or a cooperative unit, other than a reverse mortgage subject to §1026.33, the creditor shall provide the consumer with good faith estimates of the disclosures in §1026.37.

(B) If a mortgage broker provides any disclosure under §1026.19(e), the mortgage broker shall also comply with the requirements of §1026.25(c).

(f) *Mortgage loans—final disclosures—*(1) *Provision of disclosures—*(i) *Scope.* In a transaction subject to paragraph (e)(1)(i) of this section, the creditor shall provide the consumer with the disclosures required under §1026.38 reflecting the actual terms of the transaction.

(ii) *Timing—*(A) *In general.* Except as provided in paragraphs (f)(1)(ii)(B), (f)(2)(i), (f)(2)(iii), (f)(2)(iv), and (f)(2)(v) of this section, the creditor shall ensure that the consumer receives the disclosures required under paragraph (f)(1)(i) of this section no later than three business days before consummation.

§1026.21   Treatment of credit balances.

When a credit balance in excess of $1 is created in connection with a transaction (through transmittal of funds to a creditor in excess of the

total balance due on an account, through rebates of unearned finance charges or insurance premiums, or through amounts otherwise owed to or held for the benefit of a consumer), the creditor shall:

(a) Credit the amount of the credit balance to the consumer's account;

(b) Refund any part of the remaining credit balance, upon the written request of the consumer; and

(c) Make a good faith effort to refund to the consumer by cash, check, or money order, or credit to a deposit account of the consumer, any part of the credit balance remaining in the account for more than 6 months, except that no further action is required if the consumer's current location is not known to the creditor and cannot be traced through the consumer's last known address or telephone number. **Exhibit 27,28**

§1026.38   Content of disclosures for certain mortgage transactions (Closing Disclosure).

(5) *Loan information.* Under the heading "Loan Information":

(i) *Loan term.* The information required to be disclosed under §1026.37(a)(8), labeled "Loan Term."

(iii) *Product.* The information required to be disclosed under §1026.37(a)(10), labeled "Product."

RESPA - §1024.8   Use of HUD-1 or HUD-1A settlement statements.

(b) *Charges to be stated*. The settlement agent shall complete the HUD-1 or HUD-1A, in accordance with the instructions set forth in appendix A to this part. The loan originator must transmit to the settlement agent all information necessary to complete the HUD-1 or HUD-1A.

(1) *In general*. The settlement agent shall state the actual charges paid by the borrower and seller on the HUD-1, or by the borrower on the HUD-1A. The settlement agent must separately itemize each third-party charge paid by the borrower and seller. All origination services performed by or on behalf of the loan originator must be included in the loan originator's own charge. Administrative and processing services related to title services must be included in the title underwriter's or title agent's own charge.

(2) Violations:  The loan originator did not transmit all information; no deduction made from origination fees

§1024.35   Error resolution procedures.

(a) *Notice of error*. A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements

applicable to a notice of error with respect to such qualified written request.

(b) *Scope of error resolution*. For purposes of this section, the term "error" refers to the following categories of covered errors:

(1) Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments.

(2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.

(3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1). Exhibit 13,15,16

Georgia Code § 51-6-2 - When Misrepresentation of Material Fact Actionable As Deceit; Effect of Mere Concealment; Knowledge of Falsehood Essential to Deceit; When Knowledge Implied

(a) Willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action. Mere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action.

(b) In all cases of deceit, knowledge of the falsehood constitutes an essential element of the tort. A fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent

to a knowledge of their falsehood even if the party making the representation does not know that such facts are false.

Uniform Commercial Code › U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS (2002) › PART 1. GENERAL PROVISIONS AND DEFINITIONS › § 3-118. STATUTE OF LIMITATIONS.

§ 3-202. NEGOTIATION SUBJECT TO RESCISSION.

(b) To the extent permitted by other law, negotiation may be rescinded or may be subject to other remedies, but those remedies may not be asserted against a subsequent holder in due course or a person paying the instrument in good faith and without knowledge of facts that are a basis for rescission or other remedy

§ 3-203. TRANSFER OF INSTRUMENT; RIGHTS ACQUIRED BY TRANSFER.

(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument

(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a

transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument

§ 3-302. HOLDER IN DUE COURSE.

(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3-305(a).

(d)  If, under Section 3-303(a)(1), the promise of performance that is the consideration for an instrument has been partially performed, the holder may assert rights as a holder in due course of the instrument only to the fraction of the amount payable under the instrument equal to the value of the partial performance divided by the value of the promised performance.

(e) If (i) the person entitled to enforce an instrument has only a security interest in the instrument and (ii) the person obliged to pay the instrument has a defense, claim in recoupment, or claim to the instrument that may be asserted against the person who granted the security interest, the person entitled to enforce the instrument may assert rights as a holder in due course only to an amount payable under the instrument which, at the time of enforcement of the instrument, does not exceed the amount of the unpaid obligation secured.

(f) To be effective, notice must be received at a time and in a manner that gives a reasonable opportunity to act on it. **Exhibit 11,12,23,24,29,30**

(g) This section is subject to any law limiting status as a holder in due course in particular classes of transactions.

§ 3-305. DEFENSES AND CLAIMS IN RECOUPMENT.

(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following:

(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

(2) a defense of the obligor stated in another section of this Article or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; and

(3) a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against

a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

(b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1) but is not subject to defenses of the obligor stated in subsection (a)(2) or claims in recoupment stated in subsection (a)(3) against a person other than the holder.

(c) Except as stated in subsection (d), in an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (Section 3-306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument. An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument.

(d) In an action to enforce the obligation of an accommodation party to pay an instrument, the accommodation party may assert against the person entitled to enforce the instrument any defense or claim in recoupment under subsection (a) that the accommodated party could assert against the person entitled to enforce the instrument, except the defenses of discharge in insolvency proceedings, infancy, and lack of legal capacity.

(e) In a consumer transaction, if law other than this article requires that an instrument include a statement to the effect that the rights of a holder or transferee are subject to a claim or defense that the issuer could assert against the original payee, and the instrument does not include such a statement: (1) the instrument has the same effect as if the instrument included such a statement; (2) the issuer may assert against the holder or transferee all claims and defenses that would have been available if the instrument included such a statement; and (3) the extent to which claims may be asserted against the holder or transferee is determined as if the instrument included such a statement.

(f) This section is subject to law other than this article that establishes a different rule for consumer transactions.


§ 3-306. CLAIMS TO AN INSTRUMENT.

A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

§ 3-307. NOTICE OF BREACH OF FIDUCIARY DUTY.

(a) In this section:

(1)"Fiduciary" means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.

(2)"Represented person" means the principal, beneficiary, partnership, corporation, or other person to whom the duty stated in paragraph (1) is owed.

(b) If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:

(i) Notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person.

(2) In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.

(3) If an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty.

(4) If an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.

§ 3-118. STATUTE OF LIMITATIONS.

(d) An action to enforce the obligation of the acceptor of a certified check or the issuer of a teller's check, cashier's check, or traveler's check must be commenced within three years after demand for payment is made to the acceptor or issuer, as the case may be.

§ 3-119. NOTICE OF RIGHT TO DEFEND ACTION.

In an action for breach of an obligation for which a third person is answerable over pursuant to this Article or Article 4, the defendant may give the third person notice of the litigation in a record, and the person notified may then give similar notice to any other person who is answerable over. If the notice states (i) that the person notified may come in and defend and (ii) that failure to do so will bind the person notified in an action later brought by the person giving the notice as to any determination of fact common to the two litigations, the person notified is so bound unless after seasonable receipt of the notice the person notified does come in and defend.

§1024.35   Error resolution procedures.

(2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.

(3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).

(4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by §1024.34(a), or to refund an escrow account balance as required by §1024.34(b).

(5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower

(7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by §1024.39.

(8) Failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

(ii) *Different or additional error.* If during a reasonable investigation of a notice of error, a servicer concludes that errors occurred other than, or in addition to, the error or errors alleged by the borrower, the servicer shall correct all such additional errors and provide the borrower with a written notification that describes the errors the servicer identified, the action taken to correct the errors, the effective date of the correction, and contact information, including a telephone number, for further assistance.

(2) *Requesting information from borrower.* A servicer may request supporting documentation from a borrower in connection with the investigation of an asserted error, but may not:

(i) Require a borrower to provide such information as a condition of investigating an asserted error; or

(ii) Determine that no error occurred because the borrower failed to provide any requested information without conducting a reasonable investigation pursuant to paragraph (e)(1)(i)(B) of this section.

(i) *Duplicative notice of error.* The asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond pursuant to paragraphs (d) and (e) of this section, unless the borrower provides new and material information to support the asserted error. New and material information means information that was not reviewed by the servicer in connection with investigating a prior notice of the same error and is reasonably likely to change the servicer's prior determination about the error.

(2) *Notice to borrower.* If a servicer determines that, pursuant to this paragraph (g), the servicer is not required to comply with the requirements of paragraphs (d), (e), and (i) of this section, the servicer shall notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination. The notice to the borrower shall set forth the basis under paragraph (g)(1) of this section upon which the servicer has made such determination.

(2) *Remedies permitted.* Except as set forth in this section with respect to an assertion of error under paragraph (b)(9) or (10) of this section, nothing in this section shall limit or restrict a lender or servicer from pursuing any remedy it has under applicable law, including initiating foreclosure or proceeding with a foreclosure sale.

The disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following and other respects:7

a. By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b).8

b. By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a).9

c. By failing to properly identify property subject to a security interest in violation of 15 U.S.C. § 1638(a)(9) and Regulation Z § 226.18(m).10

Plaintiff did not receive a notice of transfer of servicing from Venta to First Guaranty Mortgage

## FIRST CAUSE OF ACTIONS
### Declaratory Relief - Against All Defendants

Plaintiff re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

An actual controversy has arisen and now exists between Plaintiff and Defendants regarding the respective rights and duties, in that Plaintiff contends that Defendants did not have the right to:

## SECOND CAUSE OF ACTIONS
### Violation of TILA 15 U.S.C. 1601, ET SEQ

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

Any and all statute(s) of limitations relating to disclosure and notice required pursuant to 15 U.S.C. 1601, et. Seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

An actual controversy now exists between Plaintiff, who contend she has the right to rescind the loan on the Subject Property alleged in the Complaint, and based on information and belief, Defendants deny that right.

As a Direct and proximate result of Defendants' violations Plaintiffs have incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

Defendants' actions in this matter have been willful, knowing malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### THIRD CAUSE OF ACTIONS
#### Violation of RESPA 1 U.S.C. 2601 ET SEQ

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

As a proximate result of Defendants' actions, Plaintiffs has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgement against Defendants, and each of them as set forth herein.

### FOURTH CAUSE OF ACTIONS
#### Fraud (Against All Defendants)

Plaintiff re- allege and incorporate by reference all paragraphs as though fully set forth herein.

Defendants intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving Plaintiff and inducing them to part with their personal and real property buy using a stated income loan.

Defendants engaged in the unlawful suppression of facts or circumstance by one of the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known.

Plaintiff justifiably relied on Defendant's deception, which was the actual and proximate cause of Plaintiff's damages.

Plaintiff are entitled to exemplary and punitive damages for Defendant's fraudulent conduct in the sum to be determined at trial. Further fraudulent concealment avoids the contract.

WHEREFORE, Plaintiff pray for relief as set forth below.

### FIFTH CAUSE OF ACTIONS
#### Breach of Fiduciary Duty

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

Defendants owed a fiduciary duty to Plaintiffs and breached that by ailing to advise or notify Plaintiff when Defendant's broker knew or should have known that Plaintiff did not need a HPML loan and with added cost will or has a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to place them in that loan (not in harm's way).

Regarding this loan, it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiff. It led to a maximization of profits for the Defendants, with no concern for the borrower. A 30-year fixed would have netted less return for the lender, though better for the borrower.

Defendant failed to provide material disclosures regarding to loan and its appraisal to Plaintiff while in the capacity of Plaintiff's Lender.

Defendants failed to comply with TILA/RESPA regulations and law designated to protect Plaintiff. The failure to do so placed Plaintiffs in a serious disadvantage and potential loss of their home. Such actions are violations of a fiduciary responsibility owed to Plaintiff by Defendants.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SIX CAUSE OF ACTIONS

### Unconscionability UCC – 2-3202

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the remainder of the contract without the unconscionable clause, tort it may so limit the application of any unconscionable clause as to any unconscionable result.

When it is claimed or appears to the court that contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to

present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were require to follow; coupled with the windfall that the Defendants reaped financially form the predatory practices upon Plaintiff, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

### SEVENTH CAUSE OF ACTIONS

#### CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALINGS

Plaintiff restates and incorporates herein all their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

All contracts in Georgia contain an implied obligation of good faith and fair dealing to protect the objectively reasonable contractual expectations of the parties.

Defendants ongoing, willful, and intentional failure to perform the contractual obligations under the Note and Deed of Trust Security Deed that were assigned to Defendants, upon information and belief is a blatant violation of Defendants obligation of good faith and fair dealing.

Defendants breach actually and approximately resulted in Plaintiff suffering economic damages including, but not limited to additional fees and interest accruing on the Note, additional interest on property taxes, remaining unpaid due to Plaintiff's uncertainty about the status of the property, damages resulting from loss of pursing loss-mitigation options, including possible lost profits from sale of the property when the loan balance was more reasonable, fees and advances incurred by the lender and charged or attempted to be charged to plaintiff under the terms of the Note, attorney fees for Plaintiff's attorneys and costs related thereto, including but not limited to the defense of three separate lawsuits attempting to foreclose, communicating with lenders and servicers and attorneys for the same in an effort to get any information related to the Loan.

The plaintiff is entitled to reasonable attorney fees and costs due to the necessity of having to enforce the terms of the Note and Deed of Trust, Security Deed.

### EIGTH CAUSE OF ACTIONS

#### Recession

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

Plaintiff is entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) Failure to provide a Mortgage Loan Origination Agreement; 3) Fraudulent Concealment; and 4) Public Policy Grounds, each of which provides independent grounds for relief.

The Truth in Lending Act, 15 U.S.C. 1601, et seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loan terms or the loan. Specifically, the initial disclosures do not initial TIL disclosures, and lack of diligence and collusion of the part of the broker, lender and underwriter to place Plaintiff in a loan she could not afford and would ultimately benefit Defendants following the negative amortization that accrued.

The public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender.

As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgement against Defendants, and each of them as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Katherine P. Robinson prays that this Court enter its order granting judgment for the following:

A.) For actual damages, costs, and reasonable attorney fees for violations contained in the First Claim For Relief;

B.) For statutory damages in the amount of One Thousand Dollars ($1,000.00) as to each separate violation contained in the First Claim For Relief;

C.) For _actual_ damages, costs, and reasonable attorney fees for violations contained in Claims for Relief Two through Eight;

D.) For _statutory_ damages in the amount of Two Thousand Dollars ($2,000.00) as to each separate violation contained in Claims For Relief Two through Eight;

E.) For _actual_ damages, costs, and reasonable attorney fees for violations contained in the Twelfth Claim For Relief;

F.) For statutory damages in the amount of Four Thousand Dollars ($4,000.00) as to each separate violation contained in the Twelfth Claim For Relief in the past year;

G.) For Actual damages, costs, and reasonable attorney fees for violations contained in the Thirteenth Claim for Relief;

H.) For actual damages, costs, and reasonable attorney fees for violations contained in the Fourteenth Claim for Relief;

I.) For statutory damages in the amount of One Thousand Dollars ($1,000.00) for violations in the Fourteenth Claim for Relief;

J.) For actual damages, costs, and attorney fees for violations in the Fifteenth Claim For Relief;

K.) For _actual_ damages, costs, and attorney fees for violations in the Sixteenth Claim For Relief;

L.) For _punitive_ damages as alleged in the SEVEN Claim For Relief;

M.) For actual damages, costs, and attorney fees for violations in the Seventeenth through Twenty-First Claims For Relief;

O.) For punitive damages as alleged in the Twenty-First Claim For Relief; and

P.) Such other relief which this Court may deem just and appropriate.

## JURY DEMAND

Plaintiff Katherine P. Robinson hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

Respectfully submitted this 8th day of September 2018.

/s/ *Katherine P. Robinson*

Katherine P. Robinson

Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this Complaint, by U.S. Mail, on the following Defendants:

Alterra Home Loans
515 E. Crossville Rd Suite 330
Roswell, GA 30075

First Guaranty Mortgage Corp.
P.O. BOX 19409
Charlotte, NC 28219

Venta Financial Group Inc.
1300 South Jones Blvd
Las Vegas, NV 89146

RoundPoint Mortgage Servicing Corp.
P.O. BOX 39575
Solon, OH 44139

Rushmore Loan Management Services
P.O.BOX 814529
Dallas, TX 75381


*Katherine P. Robinson*
_____
Dated: September 23, 2018            /s/ Katherine P. Robinson
KATHERINE P. ROBINSON
Pro Se

EXHIBIT LIST (FINAL)

LIST OF PROPOSED EXHIBITS

| KATHERINE P. ROBINSON (Plaintiff) ———— vs | |
|---|---|
| | (CIVIL ACTION FILE NO) |
| ALTERRA HOME LOAN, FIRST GUARANTY MORTAGE, ROUNDPOINT, MORTAGE SERVICING, RUSHMORE LOAN MANAGEMENT, VENTA FINANCIAL GROUP, (Defendants) | |

| EXHIBIT NUMBER | DESCRIPTION | NUMBER OF PAGES |
|---|---|---|
| 1 | NOTE | 4 |
| 2 | SECURITY DEED | 8 |
| 3 | Legal Description | 1 |
| 4 | Homebuyers Pre-Qualification | 1 |
| 5 | HUD Appraised Value Disclosure | 1 |
| 6 | .HPML LOAN | 1 |
| 7 | Ramon Daniels - Appraisal | 9 |
| 8 | FHA DISCLOSURES AMENDATORY CLAUSE / REALESTATE CERTIFICATION | 2 |
| 9 | Due Diligence Analysis Report FGMC | 3 |
| 10 | Settlement Statement | 3 |

1

| EXHIBIT NUMBER | DESCRIPTION | NUMBER OF PAGES |
|---|---|---|
| 22 | Letter from Plaintiff to Alterra | 1 |
| 23 | VENTA -Notice of Assignment, sale or Transfer of Servicing Rights | 1 |
| 24 | First Guaranty Mortgage Corp. - Notice of Servicing Transfer | 1 |
| 25 | VENTA — Letter payment reminder | 1 |
| 26 | VENTA — Monthly Mortgage Statement | 1 |
| 27 | ROUNDPOINT Billing Statements | 2 |
| 28 | ROUNDPOINT Escrow Analysis Statement | 2 |
| 29 | RoundPoint Mortgage Servicing Corp Letter to Atty. Rachel Scott | 2 |
| 30 | Rushmore Loan Management Services Letter to Atty Rachel Scott | 1 |
|  |  |  |

|  |  |  |
|---|---|---|
|  |  |  |

3

| EXHIBIT NUMBER | DESCRIPTION | NUMBER OF PAGES |
|---|---|---|
| 11 | Amendment to Contract #4 | 1 |
| 12 | Letter From Alterra Homes Loans | 1 |
| 13 | Altena Group, LLC Payment History | 1 |
| 14 | Venta Financial Group 2015 form 1098 | 1 |
| 15 | First Guaranty Mortage Financial Data | 8 |
| 16 | RoundPoint Mortgage Servicing Financial Data | 2 |
| 17 | Alterra Group, LLC Transaction by loan | 1 |
| 18 | HUD 203(K) Borrowers Acknowledgement | 1 |
| 19 | DMH Services LLC Service Contract | 1 |

| 20 | 203k Consultant Invoice | 1 |
| 21 | Initial Escrow Account Disclosure Statement | 1 |

2

I certify thå this is a true and corret,
copy Of the original.

# NOTE

MIN : 1006009-3071507406-8

Loan Number: GA3071507406

FHA Case No.
105-8997065-702

SEPTEMBER 23, 2015          WOODSTOCK                    GEORGIA
                              [City]                      [Sute]

4085 WEELAIJNEE RD, ELLENWOOD, GEORGIA 30294
                    [Propery/Adress]

## 1. BORROWERS PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. S 7 6 , 317 . 00    (this amount is called "Principal"), VENTA plus interest to the order of the Lender. The Lender is FINANCIAL GROUP, INC. , A NEVADA CORPOPATION .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. me Lender or anyone who takes this Note by transfer and who is entitled to receive payments under tlis Note is called the "Note Holder."

## 2. INTEEST

Interest will be charged on unpaid principal until the amount of Principal has been paid- I will pay interest at a yearly rate Of 4 .000 %.Theinterest rate required by this Section 2 is the rate I will pay both before and after any defmlt described in Section Of this Note.

## 3. PAYMENTS

(A) Time and mace of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st day of cachmonthbeginningon , NOVEMBER I 2015 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that T may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument beforePrincipal. If, on OCTOBER 1 , 2045 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date. " rwillmakemymonthlypaymentsat 1300 S. JONES BLVD., LAS VEGAS, NEVADA
89146 or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U. S. S 3 64 . 3 5

## 4. BORROWER'SRIGHT TO PREPAY

I have the right to make payments of?rincipal at any tune before they are due. A payment ofPrincipal only is known as a "Prepayment " When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not desiBlate a payment as a Prepayment if I have not made all the mondlly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. 'The Note Holder will use my Prepayments to reduce the arnount of Principal that owe under this Note. However, the Note Holder may apply my Prepayment to any accrued unpaid interest On the Prepayment amount before applying my

MULTISTATE FHA FIXED RATE NOTE
UEFHANTE 03/30/15                    Page 1 of 4                    DocMagic ePowse
                                                                   www.docmagic.com

6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of the overdue amount of each payment. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

*[Sign Original Only]*

Loan Originator: KEITH ANTHONY WEBSTER, NMLSR ID 176551
Loan Originator Organization: ALTERRA HOME LOANS, NMLSR ID 133139

[REMAINDEROF THISPAGE INTENTIONALLY LEFT

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

I certify that this is a true and correct copy of the original.

_Katherine P. Robinson_ _____ (Seal)
KATHERINE P ROBINSON          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

After Recording Return To:
VENTA FINANCIAL GROUP, INC .
1300 S. JONES BLVD., 2ND FLOOR
LAS VEGAS, NEVADA 89146
Loan Number: GA3071507406

————————— [Space Above This Line For Recording Data] —————————

# SECURITY DEED

> FHA CASE NO.
>
> 105-8997065-702

MIN: 1006009-3071507406-8

MERS Phone: 888-679-6377

THIS SECURITY DEED ("Security Instrument") is given on SEPTEMBER 23, 2015
The grantor is KATHERINE P ROBINSON

("Borrower")
. This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary.
MERS is the nominee for Lender, as hereinafter defined, and Lender's successors and assigns. MERS is organized
and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
485012026, tel. (888) 679-MERS. VENTA FINANCIAL GROUP, INC .

("Lender"
) is organized and existing under the laws of NEVADA and has an address of 1300 S. JONES BLVD. , LAS
VEGAS, NEVADA 89146

Borrower owes Lender the principal sum of SEVENTY-SIX THOUSAND THREE
HUNDRED
SEVENTEEN AND 00/100                          Dollars (U.S. $ 76 , 317 . 00
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on OCTOBER 1, 2045 .This
Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors
and assigns of MERS with power of sale, the following described property located in DEKALB County, Georgia:

FHA GEORGIA SECURITY DEED - MERS                Page of 8                    DocMagic
GADOTZ.FHA 08/31/15                                                          www.docmagic.com

---

eF@7ûfN,

SEE LEGAL DESQ-IPI'lON ATTACHED HERETO AND IVIADE A PART f--1nEOF AS EXHIBIT "A".
A.P.N.: 15 030 01 037

which has the address of 4085 WEELAUNEE RD

[Street]

ELLENWOOD                    Georgia                    30294("Property Address"):
[City]                                    [Zip code]

    TO HAVE AND TO HOLD this property unto Lender and Lender' s successors and assigns, forever, together
with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures
now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property. Borrower understands
and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but,
if necessary to comply with law or custom, MERS (as nominee for Lender and Lender' s successors and assigns)
has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell
the Property; and to take any action required ofLender including, but not limited to, releasing or canceling this
Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to
any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    I. Payment ofPrincipal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest
on, the debt evidenced by the Note and late charges due under the Note.
    2.  Monthly Payment of Taxes, Insurance, and Other Charges. Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes
and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on
the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must
pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any
year in which such premium would have been required if Lender still held the Security Instrument, each monthly
payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to
the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is
held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge
by the Secretary, these items arc called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed
the maximum amount that may be required for Borrower' s escrow account under the Real Estate Settlement

Procedures Act of 1974, 12 U.S.C. SS 2601 g! sgg. and implementing regulations, 12 C.F.R. Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

FHA GEORGIA SECURITY DEED - MERS                    Page 2 of 8
                                                                          DocMagic ℰℱℴℝℳℴ

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
FIRST to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
    SECOND to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required; THIRD to interest due under the Note;
    FOURTH to amortization of the principal of the Note; and FIFTH
to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after

the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

---

FHA GEORGIA SECURITY DEED - MERS                Page 3 of 8                      DocMagic *eForms*

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

FHA GEORGIA SECURITY DEED - MERS                Page 4 of 8                      DocMagic
GADOTZ.FHA 08/31/15                                                              www.docmagic.com

(a)    Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)    Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)    Sale Without Credit Approval. Lender shall, if permitted by applicable law (including section 341 (d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U. S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if: (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c)    No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

---

FHA GEORGIA SECURITY DEED - MERS         Page 4 of 8                    *DocMagic ⓔⒻⓞⓡⓜⓢ*

(d)    Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)    Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance by Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by

reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, Such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's

notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18.Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds, of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, arc

irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by applicable law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property from Borrower, shall immediately surrender possession ofthe Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 g! seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property ns provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. Waivers of Homestead. Borrower waives all rights of homestead exemption in the Property.

21. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

22. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

23. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| Condominium Rider | Graduated Payment Rider | Growing Equity Rider |
|---|---|---|
| CJ Planned Unit Development Rider | CJ Adjustable Rate Rider | Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☒ Other [Specify] Acknowledgment Waiver Rider | |

Provisions pertaining to releases are contained in the Rehabilitation Rider which is attached to this mortgage, and made a part hereof .

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

FHA GEORGIA SECURITY DEED - MERS        Page 7 of 8                              DocMagic *ERorms*

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages I through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____

Unofficial Witness

_____(Seal)         _____(Seal)
KATHERINE P ROBINSON     -Borrower                              -Borrower

_____(Seal)         _____(Seal)
                         -Borrower                              -Borrower

_____(Seal)         _____(Seal)
                         -Borrower                              -Borrower

_____

Notary Public, _____DEKALB   County

Loan Originator: KEITH ANTHONY WEBSTER NMLSR ID 176551
Loan Originator Organization: ALTER_RA (OME LOANS, NMLSR ID
133739

DocMagic €Forms
wwwv.docmagic.com

EXHIBXT 'W'

LEGAL DESCRIPTiON

ALL THAT TRACT QR PARCEL CF LAND LYING ANO IN LAND LOT 30 OF THE ISTH DISTRICT. DEKA-
B COUNTY, GEORGIA MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINMNG AT IRON PIN FOUND ON THE SOUTHWESTERLY SIDE OF WEELAUÄEE ONE
THOUSAND SEVEN HUNDREDTHIRTY-ONE (1731) FET NORTHWESTERLY FROM CENTER LINE OF
RIVER ROAD, SAID POINT OF NINGALSO BEING AT NORTHEAST CORNER OF THE PROPERTY NOW
OR FONÆRLY OWNED BY UiUS; RUN THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY
SIDE OF WEELAUNEE ROAD ONE HUNDREO TWEMIY-ONE (121) FEET TO AN tRON FOUND AND
PROP32TY NOW OR FORMEUY OWNED BY OLIN GILLESPJE•, RUN THENCE SOUTHWEOERLY
ALONG THE SOUTHEASTERLY urc e.41D GILLESPIE PROPERTY AT AN INE-Rm ANGLE OF 108
DEGREES 0B MIN-FES WITH THE CHORD uNE OF THE PRECEDING COINE THREE HUNDREO
SfXTY-,SEVEN AND THREE TENTHS (3673) TO AN KRON PIN FOUND MD PROPERTY NOW OR
FORMERLY OWNED BY RAY e. GLASCOt RUN THENCE SOUTH ZÍ DEGREES 15 um¡rES 00
SECONDS EAST ALO.IG·THE NORTHEQSTERLY LtNE OF SAID GLASCO PROPERTY ONE HUNDRED
TV.ENTY-TWO EIGHT
•ravn•qs (122.8) FEET TO AN IRON PIN FOUND AND SAID MUS PROPERTY; RUN
THENCE                                THE NORTHWESTERLY LINE OF SAID MILLS
THREE HUNDREO SEVENTY-FOUR (374) FEET TO TtlE SOUTHWESIERLY

OF WEELAUNEE ROAD MD POINT OF BEGINNING, CONTAINING 1.009 ACRES AND BEfNO MORE PéRTtCULARLY SHOWN ON SURVEY PREPARED ey GEORGIA SURVEYING CO.. DATED April 14.1997.

0009085325

C04D850

# Homebuyer Pre-Qualification

This is to certify that based on information provided at time of loan application

Borrower (s): Katherine P Robinson

Is/are hereby considered pre-qualified for the following type of loam

| Type | Total Loan Amount | Note Rate | Term of Loan |
|------|-------------------|-----------|--------------|
| FHA  | $81,501.00        | 4.250%    | 360 months   |

Your Interest Rate is currently: FLOATING

Your Lock Expiration is:         N/A

Property Identified.          See Prelim

You will occupy as:          Owner Occupied Property

You have been pre-qualified using an Automated Underwriting System.

Satisfactory credit review, verification of income, source of funds and property appraisal must be completed prior to full loan approval by the appropriate agency (FHA, VA, or Conventional investor/lender, whichever is applicable). Upon verification of the accuracy of the information provided, Universal American Mortgage Company, LLC will issue a formal loan commitment.

If you have any questions about this pre-qualification or if I may be of further assistance, please call me at (678) 818-4955 . Please reference the following loan number 0009085325.

By: _Km Seck_

Date: _7-14-15_

Kendra Seck
Loan Officer, NMLS# 213389
Universal American Mortgage Company, LLC
80 Vinings Drive Suite 96
MCDONOUGH, GEORGIA 30252

This Pre-qualification is not a loan commitment.

C04D850
0009085325

Revised. 6/27/11

A3866

# HUD APPRAISED VALUE DISCLOSURE

| | |
|---|---|
| Borrower(s):<br>Katherine P Robinson | Lender:<br>Universal American Mortgage Company, LLC<br>301 116th Avenue SE Ste# 400<br>BELLEVUE, WASHINGTON 98004<br><br>(678) 8184957 |

Property Address-

4085 Weelaunee Road
Ellenwood, GEORGIA 30273

FHA Case Number:

I (We) understand that my (our) application for a FHA-insured mortgage is being processed under the Direct Endorsement (DE) program. The Lender has advised me (us) that the appraiser has assigned a value of $ 100,000.00 to the property being purchased- I am (We are) aware that the final determination of value for mortgage insurance purposes will be made by the DE underwriter after he/she reviews the report. It is understood that I (we) may elect to cancel the application or renegotiap with the seller if the DE underwriter reduces the value below the amount set forth in the sales contract or requires additional repairs for which the seller will not be responsible.

X _Kordesnie P. Robinson_    Date _7-20-15_

x _____    Date _____

-Borrower

x _____    Date _____

X

-Borrower

1000050 CUSTOM
D616.UFF
XE Bcctronic Signature

VMP- 616 (000@02                                                      6 too

Loan Number : GA3071507406

HPML LOAN

I _____    hereby _____    certify _____    that
loan # GA3071507406    in the name(s) of KATHERINE P ROBINSON

071507406

is an HPML (Higher-priced mortgage loan) and has been originated and closed in accordance with all TILA ulation Z requirements.

By: _____

Correspondent Name: KEITH WEBSTER

Correspondent Name: _____

Date: SEPTEMBER 23, 2015 _____

NOT AN HPML LOAN

I hereby certify that _____

loan # _____ in the name(s) of _____

_____

Regulation Z requirements.                                                                is not an
HPML
(Higher-
priced
mortgage
Correspondent Name: _____    loan) and
has been
:: _____    originated
and closed
in

accordance with all TILA

By:

Date:

HPML LOAN
HPMLMSC  01/07/10

DocMagic EForms
www.docmagic.com

Appraiser License

Case No. 105-6997065

## STATE OF GEORGIA
## REAL ESTATE APPRAISERS BOARD

### RAMON  DANIELS

### 4301

IS AUTHORIZED TO TRANSACT BUSINESS IN GEORGIA AS A

### CERTIFIED RESIDENTIAL REAL PROPERTY APPRAISER

THE PRIVILEGE AND RESPONSIBILITIES OF THIS APPRAISER CLASSIFICATION SHALL CONTINUE IN EFFECT AS LONG
AS THE APPRAISER PAYS REQUIRED APPRAISER FEES AND COMPLIES WITH ALL OTHER REQUIREMENTS OF THE
OFFICIAL CODE OF GEORGIA ANNOTATED, CHAPTER 43-39-A. THE APPRAISER IS SOLELY RESPONSIBLE FOR THE
PAYMENT OF ALL FEES ON A TIMELY BASIS.

D. SCOTT MURPHY
Chairperson

RONALD M. HECKMAN
JEANMARIE HOLMES
KEITH STONE

JEFF A. LAWSON
Vice Chairperson

---

RAMON DANIELS

8          4301
Status     ACTIVE

CERTIFIED RESIDENTIAL REAL
PROPERTY APPRAISER

THIS LICENSE EXPIRES IF YOU FAIL TO PAY
RENEWAL FEES OR IF YOU FAIL TO COMPLETE ANY
REQUIRED EDUCATION IN A TIMELY MANNER.

State of Georgia
Real Estate Commission
Suite 1000 - International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303-1605

ORIGINALLY LICENSED
10/08/1992

END OF RENEWAL
6/25/2015



WILLIAM L. ROGERS, JR.
Real Estate Commissioner

---

RAMON DANIELS

8          4301
Status     ACTIVE

CERTIFIED RESIDENTIAL REAL
PROPERTY APPRAISER

THIS LICENSE EXPIRES IF YOU FAIL TO PAY
RENEWAL FEES OR IF YOU FAIL TO COMPLETE ANY
REQUIRED EDUCATION IN A TIMELY MANNER.

State of Georgia
Real Estate Commission
Suite 1000 - International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303-1605

ORIGINALLY LICENSED
10/08/1992

END OF RENEWAL
6/25/2016

WILLIAM L. ROGERS, JR.
Real Estate Commissioner

appraisal software by la mode, inc.

Uniform Residential

Form SCN1GL fIOTAL<sup></sup>

File# 105-8997065 D6483

-1-800-ALAMODE

VA    NO. 105-
8997065

Ap raisal

06483

Thereare    4

offered for sale in the

in    tom s 120000

lot 50000

~ TOTAL' appraisal software by a!a mode, Inc.

There are     51 comparable sales in                    witIM the cast twe°e 7ths ran          InDices from $ 50.000                    lks 125,000

| FEATURE | SUBJECT | COMPARABLE #1 | COMPARABLE SALE #2 | COMPARABLE SALE &amp; |
|---|---|---|---|---|
| Address 4065 weelaunee Rd | 1483 Panola Rd | | 3439 Flint Ave | 453 Linecrest Rd |
| Ellerwood GA 30294 | , ElANOA, GA 30294 | | Ellenwood, GA 30294 | El |
| to Su | 1.69 miles SE | | | Filed...195 miles SW, D6483 |
| Sale Price | 70 1001 | $        95.000 | 1.56 miles W | 7.55 miles SW |
| Price/Gross Liv. Area | 49.12 .tt.lS | 43.34 | 65.500 | 100.000 |
| | | | $1.86 | $ 58.55 .tt. |
| Verification Source | S | | 132 | GAMLS#7376326DO 6 |
| VALUE ADJUSTMENTS | DESCRIPTION | Visual in    n/Tax Record DESCRIPTION    + - S | Visual In ctlorvTax Record DESCRIPTION    ent | Visual ins ctlonfTax Record DESCRIPTION    +  $ retiment |
| Sales or Financing Concessions | | ArmLth Cash:0 | ArmLth | rmLth Hk1500 |
| Date of Sale,Time Lcation Leasch°ee | | f N •Res• | s02/15•c10/14 : N•Res• | D6l15•c05l15 |
| | Fee 1.03 ac        [5.79 ac N-Res: Woods DTI -Ranch    DTI:Ranch | -500 | Fee  Sj  c 13,068 Sf DTI •Ranch | Fee  Sim   le   +3 000 +3000 Sf 21 780 sf O •Res• DTI:Ranch |
| of Construction | 03 | | 03 | |
| Actual | I 37 | 45                +250 | 30 | 0 |
| Condition | | | 0 | 0              -5 000 -7 00 |
| Above Grade Room Count | Total Bdrms  Bats  Bdms  Baths 5    3    2.016   3    20 | O, Total 18dms.f BatN | 0 | Bdrms  Baths 7    4    2.1         -2,000 |
| Gross    Area | 1 427  Jt.    2 192 sq.ft. | -13.7701    1 263 | +2 952 | 1 708 -fl.       -5 058 |
| Basement &amp; finished Rooms Below Grace | 11007sfOsfwa | -5,00010sf | | sf |
| Functional UtMy | Ade          : Ad uate | | Ad uate | uate |
| Heath | FHA'Central    FHA'Central | | FHA/Central | HÆCentral |
| Efficient 'terns | Standard    Standard | | Standard | nd rd |
| Garage/Cat | | +1.000:1 | | +1 0002 a4dw |
| Porct•Pat.D)Deck | Pch.Dk EncPch\Porch. Deck | +1 500 Patlo | | +2.500 Porch. Patlo   +2 000 |
| Amenities Nichen Eq | Shed Standard    : Standard | ; None | +20001 | FP Fn Shed |
| Net | | $        -18 770 | $        11452 | $        -15. 58 |
| Adjusted Sale Price of Comparables I did        research has  sale or transfer did not        othe• | Net Adj. lab % Gross Adj. 303% s | INetAdj.   175% 76.230$GrossAdi. 17.5% able sales. It not, | Net Adi    15.1 N Jross    25.1 % s $        76,952, | 84.542 |

M research did sales or tansfws DI the for the Iree r to the effective de of this a Data Source s GAMLS and Tax Records. CRS

M research    d'd    did not reveal    sales or transfers of tN    sales for ttp    to the date of sale of the c    ble sale.
Data ClE    S)    Coun Tax Assessors
results of
me research and    clthe    saborranster    of the    sates    addlonal    ales on    3).

| | SUBJECT | COMPARAABLE SALE | COMPARABLE SALE | COMPARABLE SALE |
|---|---|---|---|---|
| of Pior S&amp;Transfer | 04/07/2015 | 09/02/2014 | | |
| Price of Prior Data Source s | $85.000 CRS/Tax Records | 101.260 CRStTax Records | CRS:Tax Records | CRSrrax Records |
| Effective Date of Data Sowca s | 07/20.'2015 | 07/20/2015 | 07/20/2015 | 07l20/2015 |

metsoo of area and of compa rsons    of the    Sub-. 04/07/2015 sas. OF re eed
Sale 1- 09/02/2014, 101,260, F    101.260 Foreclosure Deed
Sale 2 - No salejtransfer within the vious 12    ths
Sale 3 - No salefransfer within the vious 12 months
Sale 4 - 12/0212014, 512.200. Foreclosure Deed
Sale 5 - No salejtransfer within the    12 months
of sales    All sales. ex    t Sale 6. were a •ustedforsite size. Sales    and 5 were a •usted for e. Sales 3,4 and
S were    for concflion. Sale 1 exceeds the 10%    le line    stment    inedue to GLA.a -ustment. Sales 1 3 and 6 exceeded the
15% net ad•    nt  Ideline. Sales 1 3 4, and 5 exceed the 25%    a    tment uldeline. Sale 1 was    hedheaviest based on view
followed Sale 3•then Sale 2: then Sale 4, Sales 5 and 6 arel-    and not included in the su  s value estimate calculation but shown to
reflect value.

E  the appraiser    NOTE The    has not com    for the    within the    3  and does not have an
ed property.    financial interest in the

Freddie Mac Form 70 March 2005          UADVerson9/2011          Fannie Mae Form 1004 March 2005

## Uniform Residential

File# 105-8997065 D64B3

sub-

Indicated value  Sales                    Approach $ 79 000

Indicated Value by: Sales Comparison Approach                    h5 7 000        Cost Approach {if        $ 801        Income    roach if developed $
Market Accroach or overvim              and se        st ana        the Sales

Th s appraisal is made "as is", Staject to completion per Plans and specifications cn the basis of a hypotheFlcal confron mat the improvements have been completed. X subject to the foHowing repairs or alterations on the basis of a hypothetical that the repairs or alterations have been completed. or subjecttothe based on the hat the or does not u reaheration or rr.5u ect was valued as a 203K

See R lr Addendum)
property

Based on a complete visual 'inspection of the interior and exterior areas of the sutect prope%defined scope of work, statement of assumptions and limiting conditions, and appraisers certification, my [our] opinion of the market value, as fined, of real property ttBt is the subject of this report is s 79,000 asof 07/2012015 Wich is the date ot •on and the effective date of this a raisal.

Page2Of5

1004 LJAD        4J prassi

FHA-VA Cost No. 105-8997065

Appraisal Re ort

" TOTAL' appraisal software by a!a mode, Inc.

The    of Work for this    with Iden •n the Client stherine Robinson and E ie Home M    the
Intended Use ofthis    Isel    Purchase The intended Use for this    •sal is to s ort the underwriter    irements for an Insured
. In    cage. the client named In this    leal    d– not Iden • •    Intended user other then themselves as the lendin
institution and a tentiol user in the second mort    •ae les ofthis a    isalre    to others as stated in
Certification #21. The other    m chooUniform Residential    . however the should not re on    and    and
defects of the and • rovements not alrea discussed in this for the e related    The ont intended Use of this is    ralsal r    Is
transaction for which It was ordered. An other use or user of this    not intended and the    iser — dient
relationshl does not extend to    unintended user.

Th    intec form which the has contains a reference to discoverin anal and of conditions In the market and borhood of the sub- which
ne    ma im ctvalue. Thea Iserdidreviewsales li s and other Information to deve an •nion value
herein . It should be noted there are a wide v of detrimental conditions that can I ct values. These In but are not limited to non-market motivati future di
torts as convicted criminals who reside In the area nel borhood
nufsances future- umannounced surroundi dev    ts structural and    inee    conditions construction condition salls and
nical issues environmental and natural conditions includl    :inkholes

When    of the above is found to be incorrect, the    nion of market value in this    •salma not be valid Notesb    was fiormedand
nor    'b- Is assumed for a conditions not read viewable at the time of the    •on or for the lack of e    or    Cia) knowled
Ir
to discover such conditions. When adverse environmental conditions are discovered. or are known to exist, the client is    to
retainan    In the field of environmental acts on real estate. Data sources and the    rtiseof ofessionalsIn the real estate indus
This ma include GAMLS. whICh are mufti    senqces in    la. ReaEQuest,and Realist which are data information services.
Geor
Iser: Ramon Daniels    the    d    nt of the    rt and review of the re rt. Ramon Daniels    essl retains all
r- ht. title and Interest In all tents, trademarks. trade names trade secrets, software. data conclusion    s, valuations. or other
Inforrnation included in. our Of. Or In an related to this I or the of I services to the named Client and/or Intended User. The and Information su lied
RamonDanlels is a culmination OfInteflectual education essional erlen
rsonal In    and know-how. which shall at all times remain the    of Ramon Danlels. No erson shall be entitled to break
down. s out min or disseminate    nt or    of    nut not limited an conclusions valuations o Infons or
other data

There are no adverse conditions noted either on-site or on nearb ecties. As of the an overall visual observation of the ts and site was
conducted but there were no visible evidence of hazardous environmental conditions Which ma affect
thesu    or Its value. However the    r Is not an    and is not    Ted to confirm or de the existenceof hazardous
substances. If the    was built before 1978. rtlonsofthe structure ma be    of lead based    tor asbestos insulation.
Should    evidence of such material be    removal a certified ___ essional is recommended and this In no wa shall be construed
to warrant the condition of the

COSTAPPROACHTOVALUE not • byFamie the Now cost
Provide adequate \Marnatm for the lendervEen    hd sales or char methods for estimatin site value    The    -on of site value is a result of market
to for the    of site value    of
anal sls derived from tax records and land sales In    The listed site value is a market ana    that includes the    land assessment
and surrou  lots for sale in this area- This information is dreived from various sources to Include but not limited to GAMLS and Dekalb
Cou tax assessor

| ESTIMATED | REPRODUCTIONOA | REPLACEMENT COST ÆW | OPINION OF srtE VALUE | | -I | 10 000 |
|---|---|---|---|---|---|---|
| Source of cost data Natl Bullder Estimate from cost sewice C Effective date of cost data 12/22/2014 | | | 1 427 o | | ........ —2 ........ =5 | |
| | | | | | 46.00 - | 65 642 @s |
| Comments on Cost Cost estimated where a    from the National Buildin Cost | sss tvinc area calculations, reciation, etc. | | Amenities | | | 3 500 |
| | | | 462 | 2600 | —5 | 12 012 |
| Manual and Builder Estimates then rounded    •a I for the site and site  ts cost were established–R facement | | | otal Estimate of Cost–New | Frnctional | ætemal | 81 154 |
| cost    used in the cost    are for valuation | | | n    13 528 | | | 13 528 |
| on . No one client or 3rd    should re on these | | | iated Cost Of  morovments    ................. ........=5 | | | 67 626 |
| Insurance    _ The definition of -market value" on    four | | | I As-Is' Vdue    1m    2500 of this re    Is | | | |
| not    ent With the definition of insurable value. | | | of S ta    aats | | | |
| Estimated    Economic Lite (HUD and VA | | | 50 Years (INDICATED VALUE BY COST APPROACH | | | 80.126 |
| | | INCOME APPROACH TO VALU | innis Mae | | | ov, izu |
| EstimatedMo    MarketUreMS | | X GmssRenth | = S | | | |
| of Incomefu market rent and located in a market that is rlmarll owner-occu •ed | | The    Thes - ctis | me Approach Approach rell    en the SalesDe | Income ch is not used in the value estimate. (he best indicator of value. | | Indicated Value Income A roach |
| | | PROJECT INFORMATION FOR PUDs | 5    ebla) | | | |
| | | | | | Detached  Attached | |

Freddie Mac Form 70 March 2005    UADVerson9/2011    Fannie Mae Form 1004 March 2005

" TOTAL' appraisal software by ala mode, inc.

## Uniform Residential

File# 105-8997065 D6483

| | Is hein control of the Homeomers' Association [HOA ] G |
|---|---|
| | Yes Z No      Unh |

| Provide he   Information for PUDs HILY if the   "builder is in control of the HOA and the      is an attached |
|---|
| Name of |

| Total number o | Total number of units | TOW number/ Of urits sold |
|---|---|---|

| TOW nmber of units rented TE runber of units for sale     Data source s . |
|---|

| Was tlE created the conversion ot b  Doesthe      s into a PUD?      Yes      No If Yes, date of conversion. |
|---|
| contain      Yes      No Data Source |

| Are the units, common elements, and recreation facilities      Yes      No if No, describe the status of |
|---|

| Arethecornmonanmtseasedtoor  the Hameownersqssociation? = Yes      Ityes describetheremaltermse+id |
|---|

| Desclbe common elements and weasional facMies, |
|---|

6m 1004UAD                    - I-800-ALAMODE

Freddie Mac Form 70 March 2005        UADVerson3/2011        Fannie Mae Form 1004 March 2005

" TOTAL' appraisal software by ala mode, Inc.

Uniform Residential        Report        file° 105-8997055 D6483
                    Appraisal

## Uniform Residential

D6483

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraisers continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale; the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraisers judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraisers certification in this report is subject to the following assumptions and limiting conditions:

1.      The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.      The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraisers determination of its size.

3.      The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.      The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.      The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.      The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

FHAVACaseNo.     toes

Uniform Residential

Page 4 of 5

D6483

1004UAD

Ap kaisal Re krt          file# 105-8997065

## Uniform Residential

D6483

APPRAISER'S CERTIFICATION: The Appraiser ceMfes and agrees that:

1.      I have, at a mmmum, developed and reported this appraisal in accordance with the scope ot work requirements stated in this appraisal report.

2.      I performed a complete vGual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual. specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural Integrity of the property.

3.      I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were In place at the time this appraisal report was prepared.

4.      I developed my opinion of the market value ot the real property that is the subject ot this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. Further certify that I considered tree cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.      I researched, verified, analyzed, and reported on any current agreement for sale for the subject property. any offering fcr sale of the subject property in fle twelve months prior to the effective date of this appraisal. and the prior sales of the subject propeny for a mjrnmum ot three years prior to the effective date Ot this appraisal, unless othervise indicated in this report.

6.      I researched, verified. analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date Of sate Ot the comparable sale, unless otherwise indicated In this report.

7.      I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.      I have not used comparable sates that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.      I have reported adjustments to the comparable sales that reflect the markers reaction to the differences between the subject property and the comparable sales.

10.      I verified, from a disinterested source, all information in this report that was provided by parties who have a financial Interest In the sale or financing of the subject property.

11.      I have knowledge and experience In appraising this type Of property In this market area.

12.      I am aware Of, and have access to, the necessary and appropriate public and private data sources. such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13- I obtained fle Information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14.      I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs. deterioration, the presence Of hazardous wastes, toxic substances, adverse environmental conditions. etc.) observed during the inspection Of the subject propetty or that I became aware of during the research involved In performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15.      I have not knowingly Withheld any significant informaton from thiS appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16.      stated in this appraisal report my own personal, unbiased. and professional analysis, opinions, and conclusions, which are subject only to fie assumptions and limiting conditions in this appraisal report.

17- I have no present or prospective Interest in the property that Is the subject of this report, and I have no present or prospective personal Interest or bias with respect to the participants in the transacDon. I did not base, emer partially or completely, my andysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital Status, handicap, familial status. or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity Of the subject property or on any other basis prohibited by law.

18.      My employment compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding. written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value. a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19.      I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed In this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any Item in this appraisal report therefore. any Change made to this appraisal is unauthorized and I will take no responsibility for it.

20.      I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report

FHA/VA Case No. 105-8997065

## Uniform Residential
Page 5 of 6

D6483

1004 UAD

Appraisal                         file# 105-8997065 D8483

21.    The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or ts successors and assigns; mortgage insurers; government sponsored enterprises; other secondary participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraisers or supervisory appraisers (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distilled to any other party (including, but not limited to: the public through advertising, public relations, news, sales, or other media).

22.    I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards Of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.    The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and ot-ver secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.    If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.    Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001. et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1.    I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraisers analysis, opinions, statements, conclusions, and the appraisers certification.

2.    I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraisers analysis, opinions, statements, conclusions, and fie appraisers certification.

3.    The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm). Is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.    This appraisal report complies with the uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisa Foundation and that were in place at the ume this appraisal report was prepared.

5.    If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as it a paper version of this appraisal report were delivered containing my original hand written signature.

Fom        - "TOTAL" appraisal sofware by a la mode, nC. -1-800-ALAMODE

# Uniform Residential

D6483

| SER | | SUPERVISORY APPRAISER (ONLY IF REQUIRED) | |
|---|---|---|---|
| rc | *Ramón Daniels* | Signature | |
| Ramon Daniels | | Name | |
| ry Name | The Danus Group | Company Name | |
| ry Address | 244 Milam Drive | Company Address | |
| | Ellenwood, GA 30294 | | |
| ne Number | (678) 887-3113 | Telephone Number | |
| ddress | danus@bellsouth.net | Email Address | |

APPRAISER

Signature
Name Ramon Daniels
Company Name
Company Address

Telephone Number
Email Address danus@bellsouth.net
Date of Signature and          09/10/2015
Report Date of Signature    al    07/20/2015
Effective Date of          CR4301
Appraisal    State
Certification # State Certification #    or State License #
  8 License #
  ir (describe)                                State #
  GA
Explratlon Date of Certification or License    02/29/2016
or State License #
or Other
(describe)
State GA

Telephone Number
Email Address

State Certification #
or State License #

State
Expiration Date of Certification or License

SUBJECT PROPERTY

4085 Weelaunee Rd
Ellenwood, GA 30294
APPRAISED VALUE OF SUBJECT PROPERTY S    79,000
Did Inspect interior and exterior ot subject property Date

ADDRESS OF PROPERTY APPRAISED    CI Did not Inspect
subject property
4085 Weelaunee Rd
from street
Date of Inspection
LENDER, CLIENT    of                Inspection

| Name Dart | | | Appraisals | |
|---|---|---|---|---|
| | Eagle Home Mortgage | | | COMPARABLE SALES |
| Company Name | 400 Perimeter Center Terrace North Suite | | | |
| | 900, Atlanta , GA 30346 | | | |
| Company | None | | Address Did not Inspect exterior of comparable sales from |
| street | | | |
| | CI Did Inspect exterior of comparable sales from street | | |
| Email Address None | | | Date of Inspection |

UAD Version 9/2011 Page 6 of 6

1004UAD         sofld'Ue

Fom      - 'TOTAL' appraisal software by a la mode, NC. -1-800-ALAMODE

FH WACaseNO.105 899;

## Market Conditions Addendum to theA | raisal R ort

FileNm 105-8997065 06483

The purpose of this addendum is to provide the lender/client With a Clie-at ant accurate understanding of the malkEt trends and commons prevalent in the subject . This isa   addendum for all   an eNective date on or aher   1. 2009.

| Address 4085 Weelaunee Rd | | | | | |
|---|---|---|---|---|---|
| | Ellenwood | | | Stag GA | ZIP Code 30294 |
| Katherine Robinson | | | | | |

Instructions: The use required on form as the basis for conclusions, and must proude support for those conclusions. regarding housing trends and overal market colıtlons as reported in the Nelghorhood sector, Oftha appraisal report form. The appralser aust fIH Is au the information to the extent it is avdable and refable and must prOï ide analysis as illcend below. If required daJ is unavailable or is considered unrellable, the appraiser must provide an emanation. It is recnesed hat not as data sources be able to pronde data for the Shaded areas below; if it is avalabl howeve', the appraiser must include the data in the analysis. If data sources

fie required information as fla°erage instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listlngs must be propertes that competa the subject property, determined by applying the criteria frat woun be used by a prospective buyer of the . TkE awsfiernustexptaln- aromalhes in the data, such as seasonalmeets.   construction. tores\osues, etc.

| Analysis | 7-12 Monms | 4-6 Moms | Current - 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Totali # of Comparable Sales (Settled) | 20 | 10 | 21 | I Inc Inc | Stable Stable | Declnin Dech |
| Absorhon Rate (Total Sabs.'Mwfrts) | 3.33 | 3_33 | 7.00 | | | |
| Totali # of Comparable Active Months of Housina [Total AbRate) | 2 | | 4 | Dedn° | Stble Stable | Increasin |
| S | 0.6 | 0.3 | 0.6 | I Unueaing | I,°V Jna Overall | Increasin Trend |
| Median Sale & List Price, DOM, SaleLlst % | Prlor 7-12 Months | Prior 4-6 Months | Current — 3 Months | | | |
| Medıan Comparable Sde Phce | 597.500 | 75 000 | 81,000 | Increas- | | |
| Medial Comnarab» Sales on Market | 37 | | | | Stable | Increas» |
| Median Comparable List Price | 584,900 | 584 900 21 | 0 | ] Increasin Pre-andaning | ] Decllning |
| ble LIS on Manet | | | | v decunre | ] U oefcaaooal |
| Median Sah Price as % of List Price | 93 | 100 | | R_Increasing | Stable | ] Declnio |

Seller deEa . financlalasslstance nyes a stabE Explain in detall the seller concessions trends forthe past 12 fiMths (e.g., seler contribulors increased from io 5%, increasing use of buydowns, closing costs, condo tees, etc.. In an effort to sell has been a decreased in seller consessions and contribution in 5»

transactions _ However within the s market of foreclosures and shorts sellers and bank are reluctant to contribute more assistance as th are at a loss. Sellers explanation av is 3% with some variance de ndi on

motivation. The bu downs   is   cal ratlo .one   usuall WIll bu the rate down b 1/4 rcent.

Are foreclosure sales (AEOsalesa factor In he market)   Yes   the trends In IL   and sales of foreclosed

The   ects value estimate has been affected be the   decline in market   in the overall econom - However sale a   and

rices for sin e fami   rs to be   rail incre   tn value.

CIte data sources to rab DOFIrfOTiatlon.   Data Included In the   rtv•vas thered from MLS, Reall Public Tax Records and a workin

of the su ect•s market area of the market within a 2 mile radius of the   •ect

Summarize the above Informatlon as suppon for your conclusions in the Nelghborhood sectlon of Fe apprasal report tom. If you used any additlonal Informatlon, such as sales   and wkIdram to tomula-te conclusions.  both an exolanatlon and   for   conclusi08.

The data   Iled was e   ted from the   s market area located in the same subdivision and within the same zl code. As noted in the above   It reflects 21 sales com   s within the current 90 da   . However in anal -n the data athered. althou several sales were available for the   the were in man cases   well exceeded the 1 mile distance  eline. The sales selected are within the   Immediate market and subdiVISion. B selected these sales in a clear and accurate Incfication of What the value of the   Is or within the Immediate market area.

Ifthesu   complete the folio   •actName:

| Subject Protect Data | Prior 7—12 Months | Prior 4—6 MOths | Current - 3 Months | Overd Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales | | | | Incre | Stable | [ Declrlng |
| Absorptlon Rate otal | | | | Intre Decd | Stable Stable | Decln- Increas» |
| Total # ot Active (Total Ljstmos.'Ab.Rate) | | | | ud + ve vaeem [ Declnlng | Stable | |
| Months of unlt Su | | | | | | |

Are foreclosure sales BEO safes) a factor In project?   Yes   No   If yes, Indicate the number of REO listings and aa°in the trends In listings Mid sales ot   Is not a condo

Summarize the above trends and address the   on fie   •act unit and em   s/s

| | |
|---|---|
| Name   Ramon   Daniels | Supervisory Appraiser Name |
| Name The Danus | Company Name |
| Address 244 Ivanam Drive Ellenwood GA 30294 | State License/Certification # |
| Ste License/Cstfcation# CR4301          Stat GA | |
| Email Address danus@bellsouth.net | Email Address |

Freddie Mac Form 71 March 2009          Page 1 of 1          Fannie Mae Form 1004MC March 2009

Form1004MC2                    software

Loan Number: GA3071507406

FHA DISCLOSURES

AMENDATORY CLAUSE/REAL ESTATE CERTIFICATION

Buyer: KATHERINE P ROBINSON

Seller:

Date: AUGUST 28, 2015

Property Address: 4085 WEELAUNEE RD, ELLENWOOD, GEORGIA 30294

FHA AMENDATORY CLAUSE

It is expressly agreed that notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the purchaser has been given in accordance with HUD/FHA or VA requirements a 'Mitten statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender setting lOrth the appraised value of the property of not less than $8 3 , 3 3 9 .00 The purchaser shall have the privilege and option of proceeding with the consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not uarrant the value nor the condition of the property. me purchaser should satisfi.'himself/herself that the price and condition of the property are acceptable.

Note: The dollar amount to be inserted in the amendatory clause is the sales price as stated in the contract. If the borrower and seller agree to adjust the sales price in response to an appraised value that is less than the sales price, a new amendatory clause is not required. However, the loan application package must include the original sales contract with the same price as shown on the amendatory clause, along with the revised or amended sales contract-

REAL ESTATE CERTIFICATION

lhe borrovver, seller, and real estate agent or broker involved in the sales transaction hereby certify that the terms and conditions of the sales contract are true and correct to the best of their knovfledge and belief, and that any other agreement entered into by any of these parties in connection with this real estate transaction is part of or attached to, the sales agreement. The bormvver, seller, and real estate agent or broker mrther certiiY that there a-e no amendments or counterletters, either written or orals offsetting or changing said purchase agreement and that the sales contrwt is the only agreement bet%ten the buyer and seller concerning this transaction-

_Katherine P. Robinson_                8-29-15
Borrower KATHERINE P ROBINSON        Date

Borrower                              Date

---

Borrower                              Date

Borrower                              Date

---

Borrower                              Date

Borrower                              Date

-8-

---

Zf /s——
Seller                               Date

Seller                               Date

---

Real Estate Agent (if applicable)    Date

Real Estate Agent (if applicable)    Date

WARNING: The signatures above indicate that the parties fially understand that it is a Federal Crime punishable by fine, imprisonment or both to knowingly make any false statements concerning any of the above facts as applicable under the provision of Title 18, United States Code, Section 1012 and 1014.

FHA AMENDATORY CLAUSE
FHAAC.MSC 11/03/09

DocMagic eForms
www.docmagic.com

## FHA AMENDATORY CLAUSE

Loan Number: GAB 071507406

Borrower: KATHERINE P ROBINSON

Property Address: 4085 WEELAUNEE RD, ELLENWOOD, GEORGIA 30294

I, the undersigned, hereby certify that I did not receive a copy of Form HUD-92800.5B, Conditional Commitment/DE Statement of Appraised Value, prior to my signing the sales contract to purchase the property. The sales contract is hereby amended to contain the following provisions:

It is expressly agreed that notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise, unless the purchaser has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Depargyent of yetbrgns Affairs, or a Direct Endorsement lender setting forth the appraised value of the property of not less than $ _____ The purchaser shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable.

*Katherine P Robinson*
08/29/15 09:34:01 PM PDT

_____
Borrower KATHERINE P RC

_____  _____
Borrower                              Date

_____
Borrower

_____  _____
Borrower                              Date

_____
Borrower

_____  _____
Borrower                              Date

_____
Seller

_____  _____
Sel ler                                  Date

_____
Sel ler

_____  _____
Seller                                  Date

_____  _____
Seller                          Date

_____
Seller

_____
Date

Listing Agent                          Date      Selling Agent                          Date

WARNING: Section 1010 of title 18, U. S.C. provides: "Whoever for purpose of.. ..influencing such Administration.. ..makes, passes, utters, or publishes any statement, knowing the same to be false. . . shall be fined not more than $5,000.00 or imprisoned not more than two years or both. "

FHA AMENDATORY CLAUSE
HUD Handbook 4155.1 Rev-5,                    Paragraph 3-4                        DocMag1c
AC.FHA 12/30/11                                                                   www.docmagic.com

Due

Diligence Analysis Report First Guaranty Mortgage Corporation ⟨⟨⟨⟩⟩⟩- Correspondent Division -

| Initial Review Date: | 09/29/2015 | | FGMC Loan | 400015080824 |
|---|---|---|---|---|
| Borrower Name: | Robinson, Katherine P | | First Pay Date: | 11/01/2015 |
| Property Address: | 4085 Weelaunee Rd, Ellenwood, GA, 30294 | | | |
| Correspondent Name: | Venta Financial Group, Inc. | | | |
| Correspondent Loan #: | GA3C71507406 | | | |

| FG Trade Pool # | | Condition Review Date: | | Condition Clear Date: | |
|---|---|---|---|---|---|

| Loan Purpose: | Purchase | Loan Type: | FHA | Occupancy: | PrimaryResidence | LTV: | 94.940 |
|---|---|---|---|---|---|---|---|
| Loan Amount: | 76,317-00 | Appraised Value: | 79,000.00 | Program Code: | F30K | | |
| Credit Score: | | DTI Front End: | 45.758 | DTI Back End: | 46.698 | | |
| AUS Used: | DU | AUS Results: | Approve/Eligible | AUS Case ID: | 1262353041 | | |
| Note Rate: | 4.000 | Property Type: | Detached | | | | |

Due Diligence Results

-Cleared

28

*(handwritten)* Venta
702-588-5430
FHA 105 897 7065 703
LOA# GA3C71507406

*(handwritten)* Kim 404-723-00514
Ema Kthomas@govfg.com.

| | |
|---|---|
| Prior to Purchase Credit Conditions Required: | 1. NEW: Loan ineligible for FGMC financing if High Cost loan, currently failing compliance for high cost ($43.53), seller to address and provide clear compliance report. <br><br>3. Pending condition review by reno dept; initial Renovation review complete; additional conditions may apply;    BE CLEARED BY203KDPS** <br>a. Provide Rehabilitation Loan Agreement signed by Lender. <br>b. Provide Contractor License. File copy is a business license. <br>c. Provide Draw Request 1 signed by lender and contractor. Also, Consultant signature needed on page I. <br>d. Please address the Allowable fees listed cn Draw Request I. Line 6 Supplemental Origination fee 350.00 is not an Allowable fee, this is a lender Fee and should not be included. Also, Please address the consultant fees listed & paid. Consultant fee allowable is 500.00; The Draw request shows 1034.12. Please explain. <br>e. Provide Draw Request 2 signed by tender and contractor. Also, Consultant signature needed on page 1. <br>f. Please address HUDI Line Item 1304 and item 1305, states paid to the borrower. Please explain, as they should not go to the homeowner. <br>**Note: upon purchase of loan, FGMC will need to collect an addition amount for title fees not included on MMW or HUDI of 125.00. FGMC will need to collect an additioaal 100200 for the consultant fee, for change/revision of SOR. The amount was not included on the MMW or HUDI- <br><br>4.      Provide the following to reflect ADP code 702; <br>-Maximum mortgage worksheet <br>-HUD 92800-5b <br>-HUD 92900a (ail pages) and executed by Lender <br><br>5.      Provide completed Addendum to HUD-I settlement statement, include the Sales Contract date for both the Buyer and Seiler Certifications. <br><br>6.      Provide corrected HUD-I, to show buyers correct address. |
| Prior to Purchase Compliance Conditions Required: | N/A |
| Prior to Purchase Appraisal Conditions Required: | N/A |
| Post Purchase Conditions Required: | N/A |

| | |
|---|---|
| Correspondent Requirements and Information: | Post purchase conditions are required to be provided to FGMC within 30 days of purchase. Documents not received within 30 days of purchase may be subject to fees and/or repurchase. Upload all documents to the correspondent web portal. |
| | 2. All MIC, LGC and LNG certificates must be provided to FGMC within 45 days of loan closing. Documents not received within 45 days of loan closing may be subject to fees and/or repurchase. Please send these documents via e-mail to govinsuring@fgmc-com. |
| | 3. All final documents including recorded mortgages and final title policies must be provided to FGMC within 60 days of purchase. Documents not received within 60 days of purchase may be subject to late fees. |
| | 4. Loans funding with FGMC after the 23rd of the month will require a pay history and updated UPB for the current month payment when applicable. |
| | 5. Please send original collateral, Bailee and wire instructions to; Deutsclæ Bank National Trust Company Attn: Team FGMC/Correspondent 1761 East 5t- Andrews P     Santa     CA- 92705 |

| | |
|---|---|
| 6. | Please e-mail tracKng infomation once the collateral is sent to: collateral@fgmc.com For help with uploading documents to the correspondent web portal, please contact SubmissionHelp@fgmc.com |

 * _ Settlement Statement (HUD-1)

OMB Approval No. 2502-0265

**B. Type of Loan**

| FHA | 2.0 RHS | 3.0 Conv_ Unlrs. | 6. Flfe Nt_mber | | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|---|
| 4.0 VA | 5.0 Conv_ Ins_ | | 15-205 | | GA3071507406 | 105-6997065-702 |

C. Note: This form is finnished to give you a statement of actual setda-nent costs. Amounts paid to and by me settlement agent are shown- Items '(p.o.c.)" '·Here pald outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Addr—s Of Borrower | E. Name and Address Of Seller | F. Name Address of Lender VENTA |
|---|---|---|
| KATHERINE P_ ROBINSON<br>4085 WEELAUNEE ROAD<br>ELLENWOOD. GA 30294 | ELL 09-2009, LLC.<br>1209 ORANGE STREET<br>WILMINGTON, DE 19801 | FINANCIAL GROUP<br>1300 S. JONES BLVD.<br>LAS VEGAS, W 89146 |

| G. Properv Location | H_ SeflementAgent (770-924—1400) |
|---|---|
| 4085 WEELAUNEE ROAD<br>ELLENWOOD, GA 30294 | FRANK B- PALLOTTA, pc.<br>400 CREEKSTONE RIDGE WOODSTOCK. GA 30188 |

| | Place of Settlement | Settlement Date |
|---|---|---|
| | 400 CREEKSTONE RIDGE<br>WOODSTOCK, GEORGIA 30188 | 09/23'15<br>00: 09/22/15 |

| J. SUMMARY OF BORROWERS TRANSACTION: | | K- SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100- GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS ANOUNT DUE TO SELLER** | |
| 101- Contract sales property | 70,100.00 | 401. Contract sales rice | 70 100.00 |
| 102.Personal | | 402. Personal | |
| 103.Settlement | | | |
| 104. | 21 1.35 | 403_ | |
| 105. | | | |
| nts for items     seller in advatce | | Adiustments for items     seller in advance | |
| Clty/town taxes    106. CI | | 406. Itown taxes                    to | |
| 107- | 09/23 to 12;31 | 407.                       09/23 to 12131 | 110.49 |
| 108. Assessments       to | 110.49 | 408_ Assessments             to | |
| 109. | | | |
| 110. PER DIEM TO SELLER FROM 8110-9,23 | | 410. PER DIEM TO SELLER FROM 6'10-9|23 | |
| 111. | 1.500.00 | 411. | 1 0.00 |
| 112. | | 412 TMF/EG FEE FROM LISTING AGENT COMMISON | 150.00 |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 93561.84 | **420. GROSS AMOUNT DUE TO SELLER** | 71,860.49 |
| mo. AMOUNTS PAD BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT TO SELLER | |
| 201. Deposit or earnest money | 000.00 | 501. Excess        see instructions | |
| 202. Pfindpal amount of new loan(s) | 76.317.00 | 502. Settlement charges to seller (line 1400) | 4 06.00 |
| 203. E*sting loan s) taken subject to | | 503. Existing loans     subject to | |
| | | 504. Payoff of first mortgage loan | |
| | | 505. Payoff of second mortgage loan | |
| 20T | | 507- Deposit belnq disbursal as proxeeds | |
| | | 15,000.00 | . |
| opsonswents for items un     seller | | Adiustments b     nts for items un ld seller | |
| 210. City/town taxes | | City/town taxes            510-to | |
| 211. County taxes      to | | 511.County taxes                      to | |
| 212. Assessmalts | | 312. Assessmtns | |
| 213_ | | 513.2015 STATE'COUNTY TAXES | 403.30 |
| 114_ | | 514_ | |

| 215. | | | 515. | | |
|---|---|---|---|---|---|
| 236 | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 21g. | | | 519. | | |
| 220. TOTAE PAID BY FOR BORROWER | | 81.3-1700 | 520- TOTAL REDUCTION AMOUNT DUE SELLER | | 4 609_10 |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | | |
| 301. Gross due from 302 | Sue from borrower (line 120) amount | 93.561,84 | 601. Gross amount due to seller line 420 | | 71,860.49 |
| Less amounts borrower 220 | | 81 7.00 | 602 Less reduction amount due to seller 520 | | 4,609M |
| 803. CASH FROM BORROWER | | 12.244-84 | 603- CASH TO | | 67 251.19 |

**L. SETTLEMENT CHARGES:**  File Number: 15—205

| 700- Total Real Estate Brokg Fees | 400 | | PAID FROM BORROVER'S | PAID FROM |
|---|---|---|---|---|
| Division of commission line 700 as follows: | | | FUNDS AT | FUNDS AT |
| 701. s 103.00 to HARRISREALESTATE | S150 TUF | | SETTLEMENT | SETTLEMENT |
| 702 s 210300 to WALKAWAYREALTY | | | | |
| 703_ Commission at Setlement | | | | 4 .00 |
| 704- | | | | |

| 800. Items P in Connection Loan | | | | P.o.c. | |
|---|---|---|---|---|---|
| 801- Our | | s 1290.00 | GFE#l | | |
| 602 Your credit or forfie ingrest rate &osen | | 2 70 | | | |
| 803. Your | | | GFE A | | 3 865.70 |
| l Fee | | | GFE#3 | | |
| 805. Credit | | | | | |
| VFG FUNDING SUITE | | | | | 21.00 |
| 806. Tax gervke | | | | | |
| 807. certification GFE#3 | | | | | |
| 808. DESK REVIEL'J FINAL INSP VENTI | CROUP | | from GFE#3 | | 150.00 |
| 610. | | | | | |
| 811. | | | | | |
| 812. | | | | | |
| 813. | | | | | |
| 814. | | | | | |

| 5OO- Items •red Lender to Be Paid in Advance | | | | |
|---|---|---|---|---|
| 901. Del Interest from 03'23'15 to | | GFE°l | 8 das | 66.91 |
| Insurance Premium for UPMIPtc HUD | from GFE#3 | | | 1.31269 |
| 503. Homeowners insurance for I to UNPERSALINSURAN S | 47300 from GFE#11 | | | 47300 |

| 1000. Reserves oalted wiQt | | | | |
|---|---|---|---|---|
| for escrow account | | [from GFE°9 | | 146.06 |
| 1002- Hazard Insurance 2 1 39.42 mo. 78.84 | | | | |
| 1003. 0 mo. s 49.60 | | | | |
| 1004. rno- mo, | | | | |
| 1005. 2 mo. s 33.61 6722 | | | | |
| •I OCE- Annual Assessments | | | | |
| 1007. | | | | |
| 100B. mo. s | | | | |
| 1009. s coc | | | | |
| 11C0_ Title | | | | |

| 1101. Title services and lenders insurance from 78425 | | | |
|---|---|---|---|
| 1102. Setde-nent or dos• fee FRANK B. FALLOTTA. pc- 5 | 585.00 rom GFE° | | |
| 1103_ Owners tdle insurance OLD REPUBLIC TITLEFBP | | | 319.50 |
| 1104. Lenders tIde insurance OLD REPUBLIC TITLE'F8P s | 16925 | | |
| 1105. Lenders covera 76.317-oc — 16925 | | | |
| 1106. Owner's — 319.50 | | | |
| 1107_ or-tlon total tide OLD REPUBLIC TITLEFBP | 36656 | | |
| 110B. Underwriters of the tost title Insurance sum OLD REPUBLIC TITLE/FBP 122.19 1109. LENDERCPLFTE OLD REPUBLIC TITLE 30.00 | | | |
| 1110. | | | |

1112.

1113.

1200. Government Recordin and

1201 _ Government recordi                                    from G

1202- Deed S    s        Releases S                                        8C .00
1203- Transfer taxes          299.60

1204.                   Deed S      s
120S.                   State      Deed S      70-10      s      22950
1206- PREPIRECORD DEEDS      FBP'CLERK OF COURT          s      80.00
1207.

1208_

1300-        Settlement

1301-        servizes that  can      for      from GFE#6
1302.

1303. 203K FINAL DRAW vz-NTA FINANCIAL GROUP 8.95762 1304. 203K INITIAL DRAW 2 KATHERINE ROBINSON      1 634.12 1305_
203K INITIAL DRAW 1 KATHERINE ROBINSON        .00 1306. 1307.
1308.

1400. Total SetHement      enter on    103s Section J and      Section
                 Point(s) $2,575.70)                                            21 851.35        4206_00

| Com    of Good Faith Estimate G      JD-I | File  Number:   15-205 | Good    Faith | HUD-I |
|---|---|---|---|
| Char s That Cannot Increase | HUD-I Line Number | Estimate | |
| Your credit or chargef *nts for the eelfie interest rate chosm | # 801 | 1290.00 | 1,290.00 |
| Your | | 2,575.70 | 2575.70 |
| Transfer taEs | # 803 | 3,865.70 | 3 865.70 |
| State tawstam  - Deed | # 1203 | 299.60 | 2gg_60 |
| | 70.10 # 120S | | |
| State tax/stam | S    22g.50 # 120S | | |
| Cha    That In Total Cannot Increase More Than 10% | | Good    Faith | HUD-I |
| | | Estimate | |
| PREP, RECORD DEEDS | # 1201 | 80.00 | 80.00 |
| | s 80.00 # 1206 | | |
| DESK REVIEW FINAL INSP | # 805 | 21.00 | 21.00 |
| | # 808 | 150.00 | 150.00 |
| Insurance Premlum | # 902 | 1,312.59 | 1,312.59 |
| TOTAL | | 1,563.59 | 1,563.59 |
| Increase between GFE md HUD-I | | 0.00 or | 0.00 % |
| c    That Can | | Good Faith | HUD-I |
| | | Estimate | |
| Initial deposit for your | | 280.48 | 146.06 |
| * - - - - *  .....eecrow account | | | |
| Interest | # 901    s    8.3635 Ida | | |
| Homewners Insurance | | 7527 | 66.91 |
| Title services and lenders insurance | # 1101 | 472.92 | 473.00 |
| | | 784.25 | 784.25 |
| Owner's title insurance | # 1103 | 319.50 | 319-50 |

**Loan Terms**

| | |
|---|---|
| Your Initial loan amount Is | s 76 317.00 |
| Ycw loan term Is | 30 |
| Your Initial Interest rate Is | 4 |
| Your Inibal rnonthly an-nnt ovzed for principal, Interest. and any mor@a@e Irsurance Is | s 413.95      Includes E Principal |
| | ☒ Interest |
| | ☒ Mortgac      e Insurance      364.35 |
| | 49.60 |
| your Interest rate rise? | No. Yes, it can rise to a maximum of The first change wiⅡ be and Ghange again |
| | every |
| | Eva-y  date. your Interest rate can Increase or decrease by |
| | PA Over the life of the loan. your Interest rate Is guaranteed to never |
| | be lower than      % or      man |
| Evenlf make entiontime, can loan balance rise? Even if you make payments on time, an monthly amount *aed prinApal, interest. and motaze insurance rise? | No. Yes It can rise to a maximum of S |
| | No. O Yes, the first Increase be on      and the monthly amount |
| | O'Æd can nse to S |
| | The maximurn It aen ever rise to ._____ p'S |
| DOE      loan have a      Does your loan have a balloon paymnent? | ☒ MD  Ll   Yes. ur ma.'3mum      nt al |
| | ☒ No. ☐    Yes, you have a balloon paymentof$      due in |
| | rears |

| Total | Irdudlng escrow aæount payments | You do not have a monthly escrow paymentfor items, such as property taxes and homeowners insurance- You must pay these Items directly yourself, x` You have an additional monthly payment of $ 73.03 that results in a total initial monthly amount owed of $ 48698 This includes principal, interest, any mortgage insurance and any Items checked below. |
|---|---|---|
| | | Propers' taxes —>$      33-61    Homeowners insurance —>$      39.4 |
| | | Flood insurance |

Note: If you have any questions about the Set-dement Charges and Loan Terms   on this form, please contact your lender.

AuthentEoign EF731697.E023-403B-EG32-1P6DA9A02A84 \

# Amendment # 4

Data:    September     21st     2015

Amendment to that certain Agreement, more partlculàrly Identified below, with an Acceptance Date of

<u>JULY        14    , 20<u>15</u></u> relating to Property known as  <u>4085   WEELAUHEE RD.</u>,<u> ELLENWOOD</u>, Georgia   <u>30294</u>.

For and In consideration of the mutual covenants and conditions contained herein, the payment of ten dollars ($10.00), and other good and valuable conslderatlon, each paid to the other, the receipt and sufficiency of which is hereby acknowledged:

1. The undersigned:

☒ Seller and Buyer
☐ Landlord and Tenant
[2 Broker and Client
Cl Broker and Customer
☐ Broker and Broker
☐ _____ and _____
Broker and Broker

2. Amend that certain:

☒ Contract for the purchase and sale of real property

D Agreement between Broker and
Consumer Agreement between Broker
and Broker

3, As follows:
THE BUYERn&JSELIÆR SEPTEMBER 23,2015. THE BUYER AND SELLER AGREE TO CLOSE ON OR BEFORE SEPTEMBER 23.2015.

AGREE TO EXTEND CONTRACT UNTIL AND SELLER AGREE TO CLOSE

- Seller has agreed to reduce the per diem to $1,500 (to be split between the buyer's agent & lender) and paid to seller at COE.

Cl Substantive provisions continued on additional page..

This Amendment is accepted by the party to whom it was presented on

AllNamesshouldbebothsignedandprinte

Buyer/Tenant/Broker/Client/Other:                Seller/Landlord/Broker/Client/Other:

> _____                           > _____
   KATHERINE ROBINSON                                BRIAN C. NEWMAN
Printed Name                                       Printed Name

> _____                           > _____

PrintName                                          PrintName

_____ 1 of1

Form RE261 , Amendmentto Contract
Copyright© 2012 by Orthws Real Estate Enterprises, LLC. All rights reserved.
M0312012

# Alterra

# Home Loans

September 13, 2017

J. Rachel Scott
Atlanta Legal Aid Society
Senior Citizen Law Project
54 Ellis Street NE
Atlanta, GA 30303

Re: Katherine Robinson
    4085 Weelaunee Rd.
    Ellenwood, GA 309294

Dear Ms. Scott:

Please be advised that I am in receipt of your letter dated September 6, 2017 and I take full responsibility for the delay in the payment being sent out to Ms. Robinson. As I mentioned to Ms. Robinson in my letter to her on January 9, 2017, I committed to have her reimbursed and I thought that I had sent the request for payment to our accounting department. After receiving your letter, I searched my records and I found that, I had failed to send the check request to the accounting department to get Ms. Robinson reimbursed.

I am truly sorry for not following through on this matter. I know that Seniors have a very difficult time as it is, trying to make ends meet when they are on a fixed budget. For the part that I played in prolonging the reimbursement to Ms. Robinson, by not following through to ensure that she was reimbursed in a timely manner, I can't begin to express my feeling for the grief that I have caused her.

Your request for the reimbursement of the following are as follows:

$810.00    Including interest of 4% paid through September 22, 2017
—$100.00   From Ben Slayton for not following through on his commitment
$910.00    Total amount of the Check

I am sending this letter and check out today FedEx priority overnight delivery. Please convey my deepest apologies to Ms. Robinson for the delay in this reimbursement.

Respectfully,

Ben Slayton
Chief Compliance Officer

350 S. Rampart Blvd.
Suite 310
Las Vegas, NV 89145
(702) 425-3374 Direct
(310) 650-1086 Mobile

EQUAL HOUSING    BSlayton@VFG.Com LEBOER    corp NMLS # 133739

# Alterra Group, LLC

350 S. Rampart Blvd Suite 310    Phone    (702) 588-5430
Las Vegas, NV 89145    Fax    (702) 588-5431

## Payment History

| Loan number | GA3071507406 | Current     date | 1/5/2017 |
| Borrower | Katherine P Robinson | Loan closed | 1/22/2016 |
| | | Loan funded | 9/23/2015 |
| Property | 4085 Weelaunee Rd | First payment due | 11/1/2015 |
| | Ellenwood, GA 30294 | | |

| Loan amount | 76,317.00 | Unpaid principal balance | 74,184.93 |
| Rate | 4.000 | Servicing interest received | 1,009.74 |
| Original term I due | 360 / 360 | Escrow account balance | 771.02 |
| Escrow balance at closing 280.50 | | | |

### Monthly Payments

| Payment type | Due date | Payment credited date | Payment amt | Fee date | Payment date | Principal | Interest | Escrow | Late | Other | Payee | Notes received |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Monthly Payment | 11/1/2015 | 11/5/2015 | 11/5/2015 | | | 486.98 | 109.96 | 254.39 | 122.63 | | MO 22988752143 | Monthly Payment 12/1/2015 |
| Monthly Payment | 12/7/2015 | 12/7/2015 | 486.98 | 110.33 | | 254.02 | 122.63 | | | | MO 2424535593é | |
| Monthly Payment | 1/1/5616 | 1/5/2016 | 1/5/2016 | | | 486.89 | 110.60 | 253.66 | 122.63 | | | CHECK # 6685315068 |
| Monthly Payment | 2/1/2016 | 1/12/2016 | 7712/2016 | | | 486.98 | 116.68 | 247.67 | 122.63 | | | check # 2011 |
| Totals | 4 monthly payments | | | | | 1,947.83 | 447.57 | 1,009.74 | 490.52 | | | |

### Escrow Disbursements

| Payment type | Due date received | Payment credited date | Payment amt | Fee | Payment date | Principal | Interest | Escrow | Late | Other | Payee | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Totals | 0 escrow disbursements | | | | | | | | | | | |

### Late Fees Charged

| Payment type | Due date | Payment amt | Payment date | Payment date | Principal | Interest | Escrow | Late | Other | Payee | Notes date received credited |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Totals | O late fee chargeds | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Other Payments | | | | | | | | | | | | |
| Payment type | | Due date received | credited | Payment Payment amt date | Payment date | Principal | Interest | Escrow | Late | Other | Payee | Notes |
| Principal Reduction | 9/23/2015 | 9/23/2015 | 9/23/2015 | 1,684.50 | 1,684.50 | | | | | | | 203K Rehab bal. applied to Principal Balance |
| 203K Disbursement | 12/29/2015 | 12/29/2015 | 12/29/2015 | t8δ.12j-- | | | | | | (l89.1 2) | Katherine Robinson & Reginald Bailey | Ck Blo. 17246 |
| 203K Disbursement | 12/29/267; | 12/2δll4l5 | 12/δδl2015 | ‹4.59.00 | | | | | | (4,459.00) | Katherine Robinson & DMH svcs, LLC | dk-No. δll44 |
| Disbursement | 203K1/6/2616. | | | 1/6/20161/6/2016 (l,855.oolm | | | | | | -72,855.60) | KatherineCk No. l729G Robinson & CE Landscaping | |
| | | | | 2/8/2016 | | | | | | | | 2/8/2016 ckWδ613 $486.98 WILL BE FWDED TO GUARANTY |
| 203k Origination brlg. Ёee Fee | | | | | | | | | | 1/6/2016 (350.δδj- | | 203K to Alterra |
| Totals | 6 other payments | | | (5,838.62) | | | | | | (7,873.12) | | |

VENTA FINANCIAL GROUP INC 1300 S
JONES BLVD
LAS VEGAS, NV 89146

Page 1 /2

002614

PRO308 Z11 B1 P1 1 OF 1 **AUTO**MIXED AADC δδ‹
KATHERINE ROBINSON
4085 WEELAUNEE RD
ELLENWOOD, GA 30294-1508

CORRECTED (if checked)

name, street address, city or town, province
or state, country, ZIP or foreign postal code, and telephone number

VENTA FINANCIAL GROUP
1300 S JONES BLVD
LAS VEGAS, W 89146
(702) 588-5430

* CAUTION: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value Of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.

OMB No. 1545-0001

2015

Form 1098

Mortgage
Interest
Statement

| RECIPIENT'S federal identification no. | PAYER'S social security number | 1 Mortgage interest received from |
|---|---|---|
| 20-8083209 | XXX-XX-3603 | 1,076.65 |

PAYER'S/BORROWER'S name
KATHERINE  ROBINSON  4085
WEELAUNEE RD
ELLENWOOD, GA 30294-1508

2 Points paid on purchase of principal residence

2,575.70

3 Refund of overpaid interest

4 MIP $1312.59

Account number (see instructions)

5 Mortgage Insurance Premiums

1,312.59

Copy B
For Payer

The information in boxes 1 and 3 is important to information and is the furnished to the Internal Revenue Sep.Ice If you are required to file a return negligence penalty or other sanction may be imposed o you if the IRS determines that an underpayment of ta results because yo overstated a deduction fc this interest or fc these points or because yo did not report this refund interest on your return

Form 1098          (keep for your records) www.irs.gov/form1098          Department of the Treasury - Internal Revenue Service

A person (including a financial institution, a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest Also

for more information. see Pub. 936 and Pub. 535.

Payer's/Borrower's identification number. For your protection, this form may show only the last four digits of your social security number (SSN), individual taxpayer identification number (I TIN): adoption taxpayer identification number (AT IN), or employer identification number (EIN). However, the issuer has reported your complete identification number to the IRS

Account number. May show an account or other unique number the lender has assigned to distinguish your account.

Box 1. Shows the mortgage interest received by the recipient/lender during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a

"buydown" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2015 that accrued in full by January 15, 2016, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2015 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396. If the interest was paid on a mortgage: home equity, line of credit, or credit card loan secured by your persona' residence, you may be subject to a deduction limitation

Box 2. Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in box 2 may also be deductible. See Pub. 936 to figure the amount you can deduct.

Box 3. Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the 'Other income" line of your 2015 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and Itemized Deduction Recoveries in Pub. 525.

Box 4. The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow

Future developments. For the latest information about developments related to Form 1098 and its instructions, such as legislation enacted after they were published, go to www_irs_gov,form1098

Instructions for Payer/Borrower - 1098 (2015)

RECIPIENT'S/LENDER'S name, street address, city or town, province
or state, country, ZIP or foreign I code, and telephone number

CORRECTED (If checked)

OMB No. 1545-0901

* CAUTION: The amount shown

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Batch24 | 1E+09 TFG | FIRST GUAI 1/26/2016 | 1/26/2016 | 170 | Initial escr | 0 | | 0 | | 0 |
| Batch24 | 1E+09 TFG | FIRST GUAI 1/26/2016 | 3/1/2016 | 170 | Initial escrc | 66.91 | | 0 | | 0 |
| Batch24 | 1E+09 TFG | FIRST GUAI 1/26/2016 | | 142 | New loan c | 572.62 | | 0 | | 0 |
| Batch24 | 1E+09 WFG | FIRST GUAI 2/3/2016 | 11/1/2015 | 310 | MIP/PMI d | -49.6 | | | | |
| Batch24 | 1E+09 WFG | FIRST GUAI 2/15/2016 | 3/1/2016 | 173 | Payment | 122.63 | 247.28 | 0 | 117.07 |
| Batch24 | 1E+09 GF8 | FIRST GUAI 3/3/2016 | 11/1/2016 | 310 | MIP/PMI d | -49.6 | | 0 | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 3/11/2016 | | 631 | Property Pi | | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 3/14/2016 | 4/1/2016 | 172 | Modified C | 122.63 | 246.89 | 0 | 117.46 |
| Batch24 | 1E+09 GF8 | FIRST GUAI 4/4/2016 | 11/1/2016 | 310 | MIP/PMI d | -49.6 | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 4/8/2016 | 5/1/2016 | 172 | Modified C | 122.63 | 246.5 | 0 | 117.85 |
| Batch24 | 1E+09 GF8 | FIRST GUAI 4/20/2016 | | 631 | Property Pi | | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 5/3/2016 | 11/1/2016 | 310 | MIP/PMI d | -49.6 | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 5/17/2016 | | 631 | Property Pi | | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 5/26/2016 | 6/1/2016 | 172 | Modified C | 122.63 | 246.11 | 0 | 118.24 |
| Batch24 | 1E+09 GF8 | FIRST GUAI 6/2/2016 | 7/1/2016 | 173 | Payment | 122.63 | 0 | 0 | 0 |
| Batch24 | 1E+09 GF8 | FIRST GUAI 6/3/2016 | 11/1/2016 | 310 | MIP/PMI d | -49.6 | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 6/17/2016 | 7/1/2016 | 172 | Modified C | 122.63 | 245.71 | 0 | 118.64 |
| Batch24 | 1E+09 GF8 | FIRST GUAI 6/17/2016 | | 631 | Property Pi | | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 6/30/2016 | | 766 | Miscellane | | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 7/5/2016 | 11/1/2016 | 310 | MIP/PMI d | -49.6 | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 7/6/2016 | | 601 | Miscellane | | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 7/7/2016 | | 766 | Miscellane | | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 7/28/2016 | 8/1/2016 | 172 | Modified C | 122.63 | 245.32 | 0 | 119.03 |
| Batch24 | 1E+09 GF8 | FIRST GUAI 7/28/2016 | | 601 | Miscellane | | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 8/1/2016 | | 766 | Miscellane | | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 8/3/2016 | 11/1/2016 | 310 | MIP/PMI d | -49.6 | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 8/15/2016 | 9/1/2016 | 172 | Modified C | 122.63 | 244.92 | 0 | 119.43 |
| Batch24 | 1E+09 GF8 | FIRST GUAI 8/16/2016 | | 601 | Miscellane | | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 8/17/2016 | | 766 | Miscellane | | | | |
| Batch24 | 1E+09 GF8 | FIRST GUAI 8/30/2016 | 9/1/2016 | 351 | Hazard Insi | -857.86 | | | |

MIP/PMI d        -49.6
County Tax    -362.34
Escrow adv    -136.37
Escrow adv     122.63
Modified C      122.63
Miscellane
Miscellane
Escrow adv      -49.8
MIP/PMI d        -49.8
Miscellane
Miscellane
Escrow adv       63.34
Modified C      122.63
MIP/PMI d       -48.71
Modified C            0
Payment        489.43
Miscellane
Miscellane
MIP/PMI d
Modified C
Miscellane
Miscellane
MIP/PMI d
Miscellane
Miscellane
Modified C
Irregular pi
Late charge
Miscellane
MIP/PMI d
Miscellane
Modified C
Irregular pi
Escrow disl

VⅢ          44脚44                            가

FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI
FIRST GUAI

| | | | | | |
|---|---|---|---|---|---|
| Batch24 | 1E+09 GF8 | MIP/PMI d | -48.71 | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Miscellane | | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Miscellane | | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Modified C | 0 | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Irregular pa | 122.53 | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Late charg | | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | MIP/PMI d | -48.71 | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Modified C | 208.22 | | 122.24 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Principal cu | 0 | | 109.59 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Miscellane | | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Miscellane | | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Miscellane | | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | MIP/PMI d | -48.71 | | 123.02 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Modified C | 134.61 | | 3.02 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Principal cu | 0 | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Miscellane | | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Miscellane | | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | MIP/PMI d | -48.71 | | -232.61 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Misapplica | -134.61 | | 122.65 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Payment | 247.22 | | -3.02 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Misapplica | 0 | | 123.06 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Modified C | 134.61 | -241.33 | 3.02 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Principal cu | 0 | 241.7 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Miscellane | | 0 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | MIP/PMI d | -48.71 | -241.29 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Modified C | 134.61 | 240.87 | 123.48 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Principal cu | 0 | 0 | 3.02 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Miscellane | | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Miscellane | | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Misapplica | -134.61 | -240.87 | -126.5 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Payment | 140.65 | 240.88 | 123.47 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Misapplica | 0 | 0 | -3.02 | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | MIP/PMI d | -48.71 | | Batch24 | 1E+09 GF8 |
| Batch24 | 1E+09 GF8 | Modified C | 137.61 | 240.47 | Batch24 | 1E+09 GF8 |

| Batch | Loan | Inv | Transaction Type | Amount | Amount | Amount | | Guarantor | Date | Due Date | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Batch24 | 1E+09 | GFB | Principal cu | | | | 0 | FIRST GUAI | 3/3/2017 | 10/1/2017 | 310 |
| Batch24 | 1E+09 | GFB | Miscellane | | | | | FIRST GUAI | 3/13/2017 | | 601 |
| Batch24 | 1E+09 | GFB | Miscellane | | | | | FIRST GUAI | 3/14/2017 | | 766 |
| Batch24 | 1E+09 | GFB | Hazard Insu | -806.86 | | | | FIRST GUAI | 3/14/2017 | 3/1/2017 | 172 |
| Batch24 | 1E+09 | GFB | Miscellane | -20.58 | | | | FIRST GUAI | 3/17/2017 | 3/1/2017 | 174 |
| Batch24 | 1E+09 | GFB | Initial escrc | 20.58 | -20.58 | | | FIRST GUAI | 3/17/2017 | | 132 |
| Batch24 | 1E+09 | GFB | Late charge | | | | 0 | FIRST GUAI | 4/4/2017 | 10/1/2017 | 310 |
| Batch24 | 1E+09 | GFB | MIP/PMI d | -48.71 | | 124.29 | | FIRST GUAI | 4/10/2017 | 4/1/2017 | 172 |
| Batch24 | 1E+09 | GFB | Modified C | 137.61 | | 240.06 | | FIRST GUAI | 4/10/2017 | 5/1/2017 | 175 |
| Batch24 | 1E+09 | GFB | Miscellane | | | | | FIRST GUAI | 4/11/2017 | | 601 |
| Batch24 | 1E+09 | GFB | Miscellane | | | | | FIRST GUAI | 4/13/2017 | | 766 |
| Batch24 | 1E+09 | GFB | County Tax | -184.8 | | | 0 | FIRST GUAI | 5/3/2017 | 10/1/2017 | 310 |
| Batch24 | 1E+09 | GFB | MIP/PMI d | -48.71 | | | | FIRST GUAI | 5/8/2017 | 5/1/2017 | 172 |
| Batch24 | 1E+09 | GFB | Miscellane | | | | | FIRST GUAI | 5/8/2017 | 6/1/2017 | 175 |
| Batch24 | 1E+09 | GFB | Miscellane | | 239.64 | | | FIRST GUAI | 5/9/2017 | | 601 |
| Batch24 | 1E+09 | GFB | Modified C | 137.61 | | 124.71 | | FIRST GUAI | 5/10/2017 | | 766 |
| Batch24 | 1E+09 | GFB | County Tax | -184.8 | 239.23 | | | FIRST GUAI | 6/2/2017 | 5/1/2017 | 147 |
| Batch24 | 1E+09 | GFB | MIP/PMI d | -47.77 | | 125.12 | | FIRST GUAI | 6/7/2017 | 5/1/2017 | 173 |
| Batch24 | 1E+09 | GFB | Modified C | 137.61 | 238.81 | | | FIRST GUAI | 6/7/2017 | 6/1/2017 | 147 |
| Batch24 | 1E+09 | GFB | MIP/PMI d | -47.77 | | 125.54 | | FIRST GUAI | 6/7/2017 | 6/1/2017 | 172 |
| Batch24 | 1E+09 | GFB | Modified C | 137.61 | 238.39 | 125.96 | | FIRST GUAI | 6/8/2017 | 7/1/2017 | 175 |
| Batch24 | 1E+09 | GFB | MIP/PMI d | -47.77 | | | 0 | FIRST GUAI | 6/8/2017 | | 601 |
| Batch24 | 1E+09 | GFB | Modified C | 137.61 | | | | FIRST GUAI | 6/12/2017 | | 766 |
| Batch24 | 1E+09 | GFB | MIP/PMI d | -47.77 | 237.97 | | | FIRST GUAI | 6/14/2017 | | 601 |
| Batch24 | 1E+09 | GFB | Modified C | 137.61 | | | | FIRST GUAI | 7/5/2017 | 10/1/2017 | 310 |
| Batch24 | 1E+09 | GFB | MIP/PMI d | -47.77 | 237.55 | | | FIRST GUAI | 7/7/2017 | 7/1/2017 | 172 |
| Batch24 | 1E+09 | GFB | Modified C | 137.61 | 0 | | | FIRST GUAI | 7/7/2017 | 7/1/2017 | 172 |
| Batch24 | 1E+09 | GFB | Principal cu | 0 | | | | FIRST GUAI | 7/12/2017 | 8/1/2017 | 175 |
| Batch24 | 1E+09 | GFB | MIP/PMI d | -47.77 | 237.12 | 127.23 | | FIRST GUAI | 7/13/2017 | | 601 |
| Batch24 | 1E+09 | GFB | Modified C | 137.61 | | 3.04 | | FIRST GUAI | 7/31/2017 | | 766 |
| Batch24 | 1E+09 | GFB | | 0 | | | | FIRST GUAI | 7/31/2017 | 7/1/2017 | 147 |
| Batch24 | 1E+09 | GFB | | | | | | FIRST GUAI | 8/3/2017 | 7/1/2017 | 173 |
| Batch24 | 1E+09 | GFB | | | | | | FIRST GUAI | 8/8/2017 | 10/1/2017 | 310 |
| | | | | | | | | | | 8/1/2017 | 147 |
| | | | | | | | | | | 8/1/2017 | 172 |

| | | |
|---|---|---|
| FIRST GUAI | 8/8/2017 | 9/1/2017 175 |
| FIRST GUAI | 8/15/2017 | 601 |
| FIRST GUAI | 8/16/2017 | 766 |
| FIRST GUAI | 8/23/2017 | 9/1/2017 351 |
| FIRST GUAI | 8/29/2017 | 1900-01-01 301 |
| FIRST GUAI | 8/29/2017 | 9/1/2017 170 |
| FIRST GUAI | 8/30/2017 | 132 |
| FIRST GUAI | 9/5/2017 | 10/1/2017 310 |
| FIRST GUAI | 9/6/2017 | 9/1/2017 172 |
| FIRST GUAI | 9/13/2017 | 601 |
| FIRST GUAI | 9/14/2017 | 766 |
| FIRST GUAI | 9/21/2017 | 9/1/2017 312 |
| FIRST GUAI | 10/3/2017 | 10/1/2017 310 |
| FIRST GUAI | ######## | 601 |
| FIRST GUAI | ######## | 766 |
| FIRST GUAI | ######## | 10/1/2017 172 |
| FIRST GUAI | ######## | 10/1/2017 312 |
| FIRST GUAI | 11/3/2017 | 10/1/2018 310 |
| FIRST GUAI | 11/7/2017 | 11/1/2017 172 |
| FIRST GUAI | 12/4/2017 | 10/1/2018 310 |
| FIRST GUAI | 12/8/2017 | 12/1/2017 172 |
| FIRST GUAI | ######## | 1/1/2018 172 |
| FIRST GUAI | 1/3/2018 | 10/1/2018 310 |
| FIRST GUAI | 2/2/2018 | 10/1/2018 310 |
| FIRST GUAI | 2/8/2018 | 2/1/2018 172 |
| FIRST GUAI | 3/2/2018 | 10/1/2018 310 |
| FIRST GUAI | 3/13/2018 | 3/1/2018 172 |
| FIRST GUAI | 3/13/2018 | 4/1/2018 175 |
| FIRST GUAI | 4/3/2018 | 10/1/2018 310 |
| FIRST GUAI | 4/12/2018 | 4/1/2018 172 |
| FIRST GUAI | 4/12/2018 | 5/1/2018 175 |

| | | | |
|---|---|---|---|
| -48.71 | 72754.06 N | | |
| -1.32 | 72754.06 N | | |
| 1.32 | 72754.06 N | | |
| 486.98 | 72754.06 N | 486.98 | 30.31 |
| 0 | 72632.22 N | -486.98 | |
| 14.57 | 72632.22 N | | |
| -48.71 | 72632.22 N | | |
| 572.57 | 72440.39 N | | 30.26 |
| 109.59 | 72440.39 N | 0 | 0 |
| -1.32 | 72400.39 N | 0 | |
| 1.32 | 72400.39 N | | |
| -48.71 | 72400.39 N | | 30.17 |
| 498.96 | 72274.35 N | 0 | 0 |
| 3.02 | 72274.35 N | 0 | |
| -1.32 | 72274.35 N | | |
| 1.32 | 72274.35 N | | -30.17 |
| -48.71 | 72274.35 N | | 30.21 |
| 0 | 72387.33 N | 608.55 | 30.16 |
| 0 | 72387.33 N | -611.57 | 0 |
| 0 | 72387.33 N | 3.02 | |
| 498.96 | 72261.25 N | 0 | |
| 3.02 | 72261.25 N | 0 | |
| -1.32 | 72261.25 N | | 30.11 |
| 1.32 | 72261.25 N | 0 | 0 |
| -48.71 | 72261.25 N | 0 | |
| 498.96 | 72134.75 N | | |
| 3.02 | 72134.75 N | | -30.11 |
| -1.32 | 72134.75 N | | 30.11 |
| 1.32 | 72134.75 N | | 0 |
| 0 | 72140.8 N | 501.98 | |
| 0 | 72140.8 N | -505 | |
| -48.71 | 72140.8 N | 3.02 | |
| 501.96 | 72016.9 N | | |





Company Name: (VFG)  Alterra Group, LLC
Loan: GA307I507406
Through: GA307I507406

From: 01/01/1960
Through: 01/31/2017

Suppress AP G/L:  Yes

| Loan Number | Borrower & G/L # | Vendor | Transaction Description | Invoice # | Bank | Ref # | Db | Date | JR | Type | Beg Bal | Debit | Credit | Ending Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GA307I507406 | ROBINSON | KATHERINE | | | | | | | | | | | | |
| 2217 | 2217 Rehub Liens Payable (continued) | | | | | | | | | | $0.00 | | | |
| | | | K. Robinson:1653005096 | | | | | | | | | | | |
| | KATHERINE ROBINSON AND | | GA307I507406 ROBINSON | CR12282015 | 8181 | 1451 | | 12/18/15 | CR | A | | 0.00 | 600.00 | |
| | KATHERINE ROBINSON AND | | GA307I507406 ROBINSON | CR12282015 | 8181 | 17245 | C | 12/29/15 | PE | A | | 209.12 | 0.00 | |
| | ROBINSON | KATHERINE'G | GA307I507406 ROBINSON | CR12282015 | 8181 | 17244 | C | 12/29/15 | PE | A | | 4,459.00 | 0.00 | |
| | ROBINSON | KATHERINE'G | GA307I507406 ROBINSON | CR12282015 R1 | 8181 | 17246 | C | 12/29/15 | PE | A | | 0.00 | 0.00 | |
| | KATHERINE ROBINSON AND | | GA307I507406 ROBINSON | | 8181 | 17246 | C | 12/29/15 | PE | A | | 0.00 | 2,855.00 | |
| | KATHERINE ROBINSON AND | | GA307I507406 ROBINSON | CR01052016 | | 124071 | | 01/06/16 | JE | A | | 2,855.00 | 0.00 | |
| | | | GA307I507406 ROBINSON | | 8181 | 17295 | C | 01/06/16 | PE | A | | 350.00 | 0.00 | |
| | | | GA307I507406 ROBINSON | | | 124071 | | 01/06/16 | JE | A | | 2,855.00 | 0.00 | |
| | | | | | | | | | | | | 1,684.50 | 0.00 | |
| | | | | | | | | Total G/L: | | | 0.00 | 12,412.62 | 12,412.62 | 0.00 |
| 2385-GA307 | Commissions Payable | | | | | | | | | | $0.00 | | | |
| ADP | | | GA307I507406 ROBINSON | | | 25022 | | 09/23/15 | JE | C | | 0.00 | 1,335.55 | |
| | | | WEBSTER,KEITH - Commi PR10152015 | | 1000 | 19 | E | 10/15/15 | PE | A | | 1,335.55 | 0.00 | |
| | | | | | | | | Total G/L: | | | 0.00 | 1,335.55 | 1,335.55 | 0.00 |
| 2605 | Warehouse Payable - South Star | | | | | | | | | | $0.00 | | | |
| | | | GA307I507406 ROBINSON | | | 25103 | | 09/23/15 | JE | W | | 0.00 | 75,553.83 | |
| | | | GA307I507406 ROBINSON | | | 124909 | | 12/22/15 | JE | A | | 1,888.85 | 0.00 | |
| | | | GA307I507406 ROBINSON | | | 124911 | | 12/22/15 | JE | A | | 3,777.69 | 0.00 | |
| | | | GA307I507406 ROBINSON | | | 124899 | | 12/22/15 | JE | A | | 364.35 | 0.00 | |
| | | | GA307I507406 ROBINSON | | | 124858 | | 12/22/15 | JE | A | | 364.35 | 0.00 | |
| | | | GA307I507406 ROBINSON | | | 126622 | | 01/22/16 | JE | S | | 69,887.29 | 0.00 | |
| | | | SSB Den Credit Adj | | 0264 | 146 | | 03/10/16 | CR | A | | 0.00 | 728.70 | |
| | | | | | | | | Total G/L: | | | 0.00 | 76,282.53 | 76,282.53 | 0.00 |
| 2610 | Purchase Clearing | | | | | | | | | | $0.00 | | | |
| | | | GA307I507406 ROBINSON | | | 126304 | | 01/21/16 | JE | P | | 73,637.79 | 0.00 | |
| | | | GA307I507406 ROBINSON | | | 126621 | | 01/22/16 | JE | S | | 0.00 | 73,637.79 | |
| | | | | | | | | Total G/L: | | | 0.00 | 73,637.79 | 73,637.79 | 0.00 |
| 401B-GA307 | – Discount Fees - Retail | | | | | | | | | | $0.00 | | | |
| | | | GA307I507406 ROBINSON | | | 24905 | | 09/23/15 | JE | F | | 0.00 | 2,575.70 | |
| | | | | | | | | Total G/L: | | | 0.00 | 2,575.70 | 2,575.70 | 0.00 |
| 402B-GA307 | Origination Fees | | | | | | | | | | $0.00 | | | |
| | | | 203K Orig. fee per UW | | | 124071 | | 01/06/16 | JE | A | | 0.00 | 350.00 | -2,575.70 |

## 1002638011 - Robinson - Escrow Disb Amounts

| | | | | | | |
|---|---|---|---|---|---|---|
| (349 | 2/3/2013 | disbursement | Fha Connection | | 3523.02 | 374.134.93 |
| (S49 30) | 0/3/2016 | disbur-v, | Fha Connect?cn | so-co | 05 | 374.067 36 |
| (549.60) | 4/4/2013 | disbursement | Fha Connection | so_oo | | 373.E50.4C |
| (549.60) | 5/3/2013 | disbursement | Fh2 Connection | so.oo | S742.11 | 373.832.55 |
| (549.60) | 33/2013 | | uonnectzn | | S364.74 | S73.714.31 |
| :149.30) | 7/5/2013 | | Fhe Connection | so.oo | 3937.77 | S73,595.67 |
| | 8/3/2013 | disbursement | Fha Connection | so.oc | SI .010.80 | |
| (5857.86) | 8/30/2016 | Hazard insurance | Country Mutual insurance | so_oo | S275.57 | S73.357.21 |
| (349.30) | 9/2/2016 | MIP]PMI disbursement | Fha Connection | so.oo | $225.97 | 373.357.21 |
| 3133.37 | 9/7/2016 | Escrow advance | | 313a.37 | so.oc | S73.357.21 |
| ($362.34) | 9/7/2016 | County Tax Disbursement | Dekeib County | S136.37 | sc.oo | 373.357.21 |
| (3122.63) | | zscrow zdvance recovery | | 313.74 | SO.OO | S73237.38 |
| 349.60 | | =scrcw advance | | 63.34 | so.oo | S73.237.38 |
| (sc.eo) | 10/4/2013 | MIP/PMI disbursement | Fha Connection | 333.34 | so.oo | S73.237.38 |
| (333.34) | | advance recovery | | so_oo | S59.29 | $73,117.15 |
| (SQ. 71) | 11/3/2016 | | Fh2 Connection | so-oo | | 3737147316 |
| ,543.71) | 12/2/2016 | | Fha Connection | so.oo | | 573.117.15 |
| (543.71) | 1/4/2017 | disbursement | Fha Connectbn | so.oo | S597.22 | s72.ege.52 |
| (S4B_71) | 2/3/2017 | disbursement | Fha Connection | so-oo | 3371.14 | 572.875.49 |
| (S425.64) | 3/1/2017 | =scrcw disbursed to Motaa or | | so.oo | S368.13 | 372,754.06 |

73.

739

0009085325

s

D457

## 203(k) Borrowers

U.S. Department of Housing
and Urban Devebpment
Office of Housing I Federal Housing Commissioner

### Acknowledgment

**Condition of Property:** I understand that the property I am purchasing is not HUD approved and HUD does not warrant the condition or the value of the roperty- I understand the HUD plan review (where perpormed) and the appraisal are performed to determine compliance With the required architectural exhibits and to estimate the value of the property, but neither guarantees the house is free of defects. I understand I was responsible to have an Independent consultant and/or a professional home inspection service perform an inspection of the property and the cost of the inspection was (or could be) Included in the mortgage.

---

### Loan Requirements

- I understand at the time of the loan closing of an FHA-Insured 203(k) Rehabilitation Loan, for which I have applied to my lender, the proceeds designated for the rehabilitation or improvement (including a contingency reserve, mortgage payments and any other fees, where applicable) are to be placed in an interest bearing escrow account. The Rehabilitation acrow Account Is not, nor will It be treated as an escrow for the paying of real estate taxes, insurance premiums. delinquent notes, ground rents or assessments. i hereby request the lender, after the Final Release Notice is issued, to:

  Pay the net interest income directly to me/us.

  Apply the interest Income directly to the mortgage principal balance for an equal amount of principal reduction.

  other.

- I understand that the Rehabilitation Bcrow Account will cease paying interest to me if (I) the loan payments are delinquent for more than 30 days; or (2) the completion date (or an approved extension) has expired. During this period, the interest will be paid down on the mortgage principal. I understand if I clear up the delinquent or default status and/or the completion date has not expired or an extension has been approved, then the interest on the escrow account will begin again to be paid according to the request above.

- I understand no draws on the escrow account can be made until all permits have been issued by the local or state building departments, w here required. I further understand I can only request monies for the actual cost of rehabilitation. If any cost savings result on any line Item of the Draw Request, form HUD-9746-A, the amount saved must be used to: (1) Make further improvements to the property; (2) Pay tor cost overruns in other line items of the Draw Request; or (3) Prepay the mortgage principal.

- I understand the contractor(s) is responsible to complete the work described in the architectural exhibits in a workmanlike manner. If I agree the work has been properly completed, I Will sign the Draw Request, form HUD-9746-A. thereby accepting the responsibility that the completed work is acceptable and payment is justified. I understand there Is a 10 percent holdback on each Draw Request to assure the work is properly completed and for lien protection.

- i understand I am responsible to negotiate any and all agreements with the contractor(s) I select and that HUD suggests that the assumption has expired, thereby requiring the funds to be paid down on the mortgage principal.

- I understand if I change a contractor for any reason, I may be obligated under the terms of the original contractor's agreement and I should seek legal advice before taking such action. If 1 disagree with the contractor regarding the acceptable completion of the work. I can request an inspection by the fee inspector to determine if the work has been properly completed. If an agreement cannot be made with the contractor, the lender may hold the money until such time as an agreement is reached or an arbitrator's decision is rendered.

- I understand the lender or HUD does not provide a one-year warranty on the completed work on the property. I am responsible to obtain such warranty(s) from the contractor(s) and the warranty should be stated in the Homeowner-Contractor Agreement.

- I understand I am responsible to make the mortgage payments during the term of the loan. including the rehabilitation period, to ensure the property will not go into default. The construction on the home must start within 30 days; if the construction ceases for more than 30 days, the lender may consider the loan in default or the lender can use the escrow money to have the work completed. If the work stops or is not progressing as it should, or if the work does not comply with the accepted architectural exhibits, the lender may require additional compliance inspections to protect the security of the loan and I will be responsible to pay for the inspections and the cost of the inspection may be withheld at the next draw request.

- I understand no changes to the architectural exhibits can be made without the acceptance of the lender (or HUD) on form HUD-92577. The contingency fund is set up for changes that affect the health, safety, or items of necessity of the occupants of the property. If the contingency reserve is insufficient, I must place additional monies into the account for payment upon acceptance of the change. Additional Improvements can be made after it is determined no further health and safety items exist. A change order will be made to assure the monies are available to the contractor upon completion of the changed work.

- I understand if there are unused contingency funds, mortgage payments, inspection fees or other monies in the Rehabilitation Escrow Account after the final Release is processed, the lender, in compliance with HUD regulations, must apply those funds to prepay the mortgage principal, provided those items are a part of the mortgage.

Agreement with the contractor Should include a provision for binding arbitration with the American Arbitration Association on any dispute.

- I understand if I am using the acrow Commitment Procedure, I must sign form HUD-314. The funds deposited in an escrow, trust or special account will not be released until an assumption of the loan occurs by a creditworthy buyer or until the time allowed for such

- I understand the lender may retain the 10 percent holdback, for a period not to exceed 35 days (or the time period required by law to file a lien, whichever is longer), to ensure compliance with state lien waiver laws or other state requirements. upon completion of the work. I understand I will be provided: (1) The Final Draw Request; (2) The Final Release Notice; and (3) An accounting of the final distribution of all funds.

This statement must be delivered to you prior to closing the loan. Return one copy to your lender as proof you have read the entire document. Keep one copy for your records. You, the borrower(s), must be certain that you understand this information. Sign here only aner you have read this entire document. Seek professional advmce if you are uncertain

Borrower's Signature & Date:

X _Catherine P. Robinson_    7-20-2015    | Co-Borrow  s Signature & Date:

Ka heri ne P Robi nson

I, the lender, certify this information as delivered to the borrower(s) prior to the time of loan closing.
Lenders Signature & Date:

|  | Kendra Seek |
|  | Loan Officer, ma.S# 213389 |

HUD 203(k) Borrower's
Acknowledgment
VMP@

1001989 ref. Handbook 4240.4 form HUD-92700-A (8/95)
D457.uff
YF A—rtrnnlr                                                              VMP457 (1005)

### Reginald Bailey

Reginald Bailey, HUD Consultant

Decatur GA, 30034
Office: (404) 429-8358

2774 Green Marsh Court

**INVOICE**

Date: 09-18-2015
Ice No: 1

Property: KATHERINE
ROBINSON
Loan No: 105 8997065 703
Case No: 105 8997065 703

Invoice No;

Bill To:   Katherine Robinson

Contact:
Phone: (857) 417-0373

Property Address: 4085 Weetaunee Road, Ellenwood, GA 30294 Applicant:
Katherine Robinson

| Invoice Item | SubTotal | Mileage Charge | Total |
|---|---|---|---|
| Document Revision | $ 100.00 | | $ 900.00 |
| Document Revision | $ 100.00 | | $ 100.00 |
| Feasibility Analysis | $ 325.00 | $ 4.56 | $ 329.56 |
| Work write up | $ 500.00 | $ 4.56 | $ 504.56 |



InvoiceTotal: | $ 1034.12

Notes:
$500.00 retainer paid by homeowner

# DMH Services LLC.
## Full Restoration
## Service Contract

(678) 764-1188

ER NAM  S)

CUSTOMER BILL-  STR ADDRESS                    AMOUNT COLLECTEL')

S  :m, STATE, ZIP  -037          AMOUNT DUE
                                 R PHONE NUMBER

yen   Cedar Shake layers      Cedar Shingles _ lyers     Flat  layers.
Remove existing layeß from structure (number of squares) 9 —Z.
Replace shingles and felt (number of squares)  /
Utilize roller magnet to renwve nail &bris.
Renwve all roofing materials, pipe jacks, turtle vents, turbine vents, and exhaust flutes.
5 Replace rotten ordamaged roofdeckingatarateof$4500 per         per how, per worker, & materials.
Apply Ice and water shield around all vents and valleys.
Cover entire      with new felt paper Install new
roofing material: Type:

S      InstallChimneynashing: Y
   10. All permit fees and taxes included.
                    Year Labor Warranw          Year Manufacturer's Warranty
                    Approxinute Start Date              Completion Date.

* (First two sheets of rotten decking are free)

Options

Extenor

O Soffit                                                                                    Right

$ O Fascia

D Sldmg

Gutters

$ Intenor*

Kitchen                                        Living

Bathroom                                     Master Bed

Dining

5 to I.) bo Cust=aerwillprovidealldocuments made and informationnecessary fcrsubmisslm ofclaimsto scope CustonexsInsurcr,

r.fworkand Blcingwith and for paymentsCustomer's insura and adjusters.

2.) Custmner payments appolnts related Company to Companies as fre Custorner's work. All power direct ofatteney costs,
overhead to inspect and profit adjust allowed the by loss, Customer's and to collect insurer, and and receive supple-all
Insurance
ments approved by Custmners Insurer for additional  upgades, options or cost Increases arc to bc pald to Company.

3.) All  have 10 days so will submit result final lien payment against property. or depreclation Customer, to Company Owner,
Signer upon dle will release be reoonslbtefor "f ttnds from any your and insuranceall court
company. Failure In doing costs,
attorney fees, finance or late charges.

VWe agree to the terms and conditions of the Contract.

Customer's Signature                          Date      Sales       *ve Signatun*

NO cash payments will be accepted-
All payments should be made in the form of either a money order or check, payable to DMY Services LLC.

PLEASE KEEP THISSTATEMENT FOR COMPARISON WITH THE ACTUAL ACJIVITY IN YOUR ACCOUNT AT TIE
END OF TT-IE ESCROW ACCOUNTING COMPUTAIION YEA:

*Kathevin P.A.Bion*       S-23-uz-                          KATHERINE P ROBINSON

Borrower                              Date

Borrower

Borrower                              Date



<div align="right">Date</div>

Borrower                                                    Date

INITIAL          ESCROSV ACCOUNT DISCLOSURE STATEMENT

Page 2 of 2                                    DocMagic EForms
                                               www.docmagic.com

VEADS/EC

Katherine Robinson
HOB? Weelaunee Rd
Ëllenwood, GPr 302+t

November 2015

Alterra Home Loans
515 E. Crossville Rd
Ste # 330
Roswell, GA 300 75

Attn: FHA Processing

RC. Error                                 Qecson

To Whom It May Concern:

The FHA Case number differs. 1) 203(k) and Streamlined (k) Maximum Mortgage Worksheet – dated 9/21/15   Case # 105-8997065 703 "Note" NOTE   MIN: 100 6009-307150 7406-8   Loan Number GA 307150 7406   FHA Case No. 105-8997065-702 "Dated" 9-23-75

Please make the necessary corrections and let me know the ramifications when monies are to be paid to that Escrow, which Escrow!. or returned to me. There should be monies returned to my Account. I have been trying to find out who I am to contact after the loan particulars have been signed. Dealing with contractor issues and escrow issues like having a current number. Help! Please!

Thank you,

Katherine Robinson

Katherine Robinson

Worksheet

Note



Venta

Financial Group, Inca

Wholesale

February 1, 2016 Alterra Home Loans • Venta

KATHERINE    ROBINSON
4085 WEELAUNEE RD
ELLENWOOD, GA 30294

Re: Loan Number:   GA3071507406

Property Address:   4085 WEELAUNEE RD

ELLENWOOD, GA 30294

Dear Borrower,

NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

The servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from Venta Financial Group, Inc. to RoundPoint Mongage Servicing Corporation effective March I , 2016. The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mongage instruments, other than the terms directly related to servicing of your loan.

Your New Servicer will start accepting payments received from you on or after March 1, 2016. Important: Any payments due to Venta Financial Group, Inc. prior to March 1, 2016 are owed to Venta Financial Group, Inc.

Please send all payments due on or after March 1, 2016 to RoundPoint Mortgage Servicing Corporation at this address: P.O Box 19789 Charlotte, NC 28219. If you have any questions for either your Current Servicer, Venta Financial Group, Inc. or your New Servicer, RoundPoint Mortgage Servicing Corporation about your mortgage loan or this transfer, please contact them using the information below:

Current Servicer:
Venta Financial Group, Inc.
Mortgage Servicing Division
855-766-4059 (Toll Free)
   M-F 8:00am - 5:00pm MST
   Jones Blvd P.O. Box 19789
Las Vegas, NV 89146

New Servicer:
RoundPoint Mortgage Servicing Cotporation
Customer Service Team
877-426-8805 (Toll Free)
8:00am - 8:00pm, M-F ET 1300 S.

Charlotte, NC 28219

Important note about insurance: Ifyou have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may affect your insurance in the following way: These products will NOT transfer to your New Servicer.

You should do the following to maintain coverage: To continue these optional policies, contact your insurance carriers directly and inform your New Servicer ofany coverage you are planning to continue,

Under Federal Law, during the 60-day period following the effective date ofthe transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the New Servicer as late, and a late fee may not be imposed on you.

Ifyou have any questions regarding your account prior to the transfer date, please contact us at 855-766-4059, Monday through Friday between 8:00 am and 5:00 pm.

Sincerely,
Venta Financial Group, Inc.

1800 S. Jones Blvd. • Las Vegas, NV 89146 855-766-4059 corp NMLS # 133739

LENDER



First Guaranty
Mortgage Corporation
P.O. Box 19409
Charlotte, NC 28219



ROUND POINT
MORTGAGE SERVICING CORPORATION

January 27, 2016                    NOTICE OF SERVICING TRANSFER

00030

KATHERINE ROBINSON
4085 WEELAUNEE RD
ELLENWOOD, GA 30294

Prior Loan Number:400015080824 RPMS
Loan Number: 1002638011

Notification  of  Servicing  Transfer
4085 WEELAUNEE RD
ELLENWOOD, GA 30294

Dear Valued Customer:

The servicing of your mortgage loan is being transferred, effective 02/15/16. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage will change.

First Guaranty Mortgage Corporation is now collecting your payments. First Guaranty Mortgage Corporation will stop accepting payments received from you after 02/15/16.

RoundPoint Mortgage Servicing Corporation will collect your payments going forward. Your new servicer will start accepting payments received from you on 02/15/16.

Please be assured that the transfer of the servicing of your mortgage loan does not affect any terms or condition of the mortgage instruments, other than those terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing. In this case, all necessary information is combined in this one notice.

If you have any questions for your present servicer, First Guaranty Mortgage Corporation, or RoundPoint about your mortgage loan or this transfer, please submit your inquiry using the contact information below:

Prior Servicer
First Guaranty Mortgage Corporation
Customer Service
800-372-6499
1900 Gallows Road, Suite 800
Tysons Corner, VA 22182

New Servicer
RoundPoint Mortgage Servicing Corporation
Customer Service Team
877-426-8805
PO Box 19789
Charlotte, NC 28219
servicinghelp@roundpointmortgage.com

We have also provided a Frequently Asked Questions enclosure to further assist you during the transfer process.

Please send your regularly scheduled mortgage payment to RoundPoint at the below business address:

RoundPoint Mortgage Servicing Corporation
P.O. Box 674150
Dallas, TX 75267-4150

Always include your RoundPoint loan number on your paymervt as reference. If your monthly payment currently includes escrow for taxes and/or insurance, this will continue without interruption.

In the event you have already sent your scheduled monthly mortgage payment to First Guaranty Mortgage Corporation, you do

**Venta**

**Financial Group, Inc.**

Alterra Home Loans • Venta Wholesale

October 6, 2015

KATHERINE    ROBINSON
4085 WEELAUNEE RD
ELLENWOOD, GA 30294

Borrower Loan Number: GA3071507406

Nwperty Address:    4085 WEELAUNEE RD
                    ELLENWOOD, GA 30294

## PAYMENT REMINDER LETTER

Dear Borrower,

We would like to take this opportunity to congratulate you on the purchase or refinance of your home. Your mortgage payment in the amount of $486.98 is due to VENTA FINANCIAL GROUP, INC. on 11/1/2015.

We would also like to notify you that the Servicing of your loan may be transferred to a new servicer in the near future. This is a common practice in the Mortgage Industry and will not affect the terms and conditions of your Mortgage. In the event of a transfer, you will receive documentation from your new servicer in the mail. In the meantime, please send your payments to VENTA FINANCIAL GROUP, INC.

Please make your payment before the 15th of each month to avoid any late penalties and remit your payment by check or money order to the following address:

VENTA FINANCIAL GROUP, INC
ATTN: ACCOUNTS RECEIVABLE
1300 S. JONES BLVD
LAS VEGAS, NV 89146

Should you have any questions regarding the servicing of your Mortgage loan, please contact our Servicing division via phone at 855-766-4059 or via email at myhomeloan@goalterra.com or miprestamo@goalterra.com.

Sincerely

Mortgage Servicing Division

## ROUNDPOINT
MORTGAGE SERVICING CORPORATION
Charlotte, NC 28219-9409          Mortgage Billing Statement P.o. Box 19409          Statement Date 01/31/2018
Statement Enclosed

+ 0832182 oooooogoæ 09RPOJ 0945232  001 pg
KATHERINE P ROBINSON
C/O ATLANTA LEGAL AID SOCIETY INC
54 ELLIS ST NE
ATLANTA  GA
30303-2403

### YOUR PAYMENT INFORMATION
Loan Number: 1002638011    Payment   Due   Da
02/01/2018 Net Payment Amount Due: $501 .96

If payment is not received by 02/16/2018, a late fee of $14.57 will be charged

pay online at www-.rpmservicingecom—

877-426-8805 1 ServicingHelp@RoundPointMortgage.com

Property Address:
4085 WEELAUNEE RD
ELLENWOOD, GA 30294

### SIGN UP FOR ONLINE BILLING STATEMENTS


You can securely access your billing statements online at your convenience 24/7


You will receive email notifications when your billing statement is being prepared


You can download your statements and save them for your records

Please detach bottom portion and return with your payment. Allow 7-10 days for postal delivery. Please do not send cash.

KATHERINE P ROBINSON          Statement Date:          01/31/2018

| YOUR ACCOUNT INFORMATION | | YOUR PAST PAYMENT BREAKDOWNt | | | EXPLANATION OF AMOUNT DUE |
|---|---|---|---|---|---|
| | | | LAST MONTH | YTD | Principal: $126 |
| Loan Due Date: | 02/01/2018 | Principal: | $0.00 | $0.00 | Interest: $237 |
| Outstanding Principal: | $71,391.28 | Interest: | $0.00 | $0.00 | Escrow (Taxes and Insurance): |
| Interest Rate: | 4.000% | Escrow (Taxes & Insurance): | $0.00 | $0.00 | $137.61 Additional Monthly |
| Prepayment Penalty: | No | Additional Monthly Amounts: | $0.00 | $0.00 | Amounts**: $0.00 |
| Escrow Balance: | $337.67 | Charges and Fees: | $0.00 | $0.00 | Regular Monthly Payment: $501.96 Unpai |
| Corporate Advance Balance: | $0.00 | | | | Late Charges: $0.00 |
| | | Partial Payment(Unapplied)*: | $0.00 | $0.00 | Charges and Fees**: $0.00 Past Du |
| | | Total: | $0.00 | $0.00 | Payment(s); $0.00 Suspense Balance |
| | | | | | $0.00 Net Total Amount Due: $501.96 |

*Important Information About Partial Payments*
Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

**See back

*Important information about Temporary Loss Mitigation Payment Plans Please note: If you have agreed to a temporary loss mitigation payment plan, your payments are applied to the account according to the terms of the Note, not the terms of the temporary loss mitigation payment plan.

## YOUR TRANSACTION ACTIVITY BETWEEN 12/20/2017 AND 01/31/2018

| Date Paid | | | Interest | | Additional Monthly Payment | and Fees | Partial Payment (Unapplied) | Total |
|---|---|---|---|---|---|---|---|---|
| 01/03/2018 | MIP/PMI Disbursement | $0.00 | $0.00 | -$47.77 | $0.00 | $0.00 | $0.00 | -$47.77 |

## IMPORTANT INFORMATION

We've updated our policy on returned checks. Please read the Payment and Payoff Information section on the back of this statement to learn about changes which could potentially impact the fees assessed in the event that a payment is returned due to insufficient funds (NSF).

If you are experiencing financial difficulty, we're here to help. Take a look at the back of your billing statement for information about mortgage counseling or assistance.



# Vent
# a

Financial Group, inc.

December 17, 2015Alterra Home Loans Venta Wholesale

Katherine Robinson
4085 Weelaunee Rd
Ellenwood, GA 30294

Borrower Loan Number: GA3071507406

Property Address:      4085 Weelaunee Rd
                       Ellenwood,-GA -30294m

*PAID MO from Wells Fargo #b6B5315068 on P5312 for [illegible] 9\$B0. 89*

*1,2D/B*

## MONTHLY MORTGAGE STATEMENT 7

*PAID CK #3011 posted Jan 2015 aft Feb1,201*

Dear Borrower,

We would like to take this opportunity to congratulate you on the purchase or refinance of your home. Your mortgage payment in the amount of $486.98 is due to VENTA FINANCIAL GROUP, INC. on 1/1/2016.

We would also like to noti$r you that the Servicing ofyour loan may be transferred to a new servicer in the near future. This is a common practice In the Mortgage Industry and will not affect the terms and conditions of your Mortgage. In the event of a transfer, you will receive documentation from your new servicer in the mail. In the meantime, please send your payments to VENTA FINANCIAL GROUP, INC.

Please make your payment before the 15th of each month to avoid any late penalties. At this time we are not able to accept over the phone payments or online payments. Please remit your payment by check or money order to the following address:

VENTĀ FINANCIAL GROUP, INC
ATTN: ACCOUNTS RECEIVABLE
1300 S. JONES BLVD
LAS VEGAS, NV 89146

Should you have any questions regarding the servicing of your Mongage loan, please contact our Servicing division via phone at 855-766-4059 or via email at myhomeloan@goalterra.com or miprestamo@goalterra.com.

Sincerely

Mortgage Servicing Division

KATHERINE P ROBINSON                    7.3                    Loan Number: 1002638011

NEW PAYMENT EFFECTIVE DATE: December 01, 2016

## ESCROW ACCOUNT PROJECTIONS AND ACTIVITY HISTORY

Table 1 shows a month by month estimate of the activity we anticipate will occur in your escrow account over the next 12 months. This table shows the projected low balance point that is used to calculate an escrow shortage or surplus. Table 2 itemizes escrow account transactions since your previous, analysis or initial disclosure. Last year's estimates are next to the activity.

### TABLE 1 - ACCOUNT PROJECTIONS

| Month | Description | Payments Estimate | Minimum Estimate | Disbursements | Balance | Required |
|---|---|---|---|---|---|---|
| | Beginning Balance | $500.01 | | | | |
| December | FHA INSURANC | 209.87 | | 48.71 | 661.17 | 322.32 |
| | Difference 338.85 | | | | | |
| January | FHA INSURANC | 209.87 | | 48.71 | 822.33 | 322.32 |
| | Difference 500.01 | | | | | |
| February | FHA INSURANC | 209.87 | 48.71 | 983.49 | 322.32 | 661.17 |
| March | FHA INSURANC | 209.87 | 48.71 | 1,144.65 | 322.32 | 822.33 |
| April | FHA INSURANC | 209.87 | | 48.71 | 1,305.81 | 322.32 |
| | Difference 983.49 | | | | | |
| May | FHA INSURANC | 209.87 | 48.71 | 1,466.97 | 822.32 | 1,144.65 |
| June | FHA INSURANC | 209.87 | 48.71 | 1,628.13 | 322.32 | 1,305.81 |
| July | FHA INSURANC | 209.87 | 48.71 | 1,789.29 | 322.32 | 1,466.97 |
| August | FHA INSURANC | 209.87 | 48.71 | 1,950.45 | 322.32 | 1,628.13 |
| September | FHA INSURANC | 209.87 | 48.71 | 2,111.61 | 322.32 | 1,789.29 |
| September | COUNTY TAX | 0.001 | | —362.3-4 | 3222 | 1,42b.95 |

1,740.27
1,044.86
1,206.02
338.81
499.97

September HAZARD INS 0.00 704.41322.32 722.54 October FHA INSURANC 209.874871322.32 883.70 October COUNTY TAX 0.00 867.21 322.32 16.49
November   FHA INSURANC   209.87                                    48.71322.32           177.65

*Low Balance used to determine escrow shortage or surplus. The Escrow Account Balance displays the amount actually required to be n hand as specified by Federal law, state law and your mortgage documents, and may include a cushion of up to 1/6th of the scheduled escrowed disbursements. The cushion helps minimize the amount your escrow account could be overdrawn if tax or insurance payments increase, and may be used to pay escrow advances.

## TABLE 2 - ESCROW ACTIVITY HISTORY

| Month | Description | Payments Estimate | Payments Actual | Disbursements Estimate | Disbursements Actual | Total Balance |
|-------|-------------|---------|---------|---------|---------|---------|
|  | Beginning Balance |  |  |  |  | $523.02 |
| February |  | 0.00 | 122.63 * | 0.00 | 0.00 | 645.65 |
| March | FHA INSURANC | 0.00 | 122.63 * | 0.00 | 49.60 * | 718.68 |
| April | FHA INSURANC | 0.00 | 122.63 * | 0.00 | 49.60 | 791.71 |
| May | FHA INSURANC | 0.00 | 122.63 * | 0.00 | 49.60 | 864.74 |

June FHA INSURANC 0.00 172.23 * 0.00 49.60 * 987.37 July FHA INSURANC 0.00 122.63 * 0.00 49.60 1 ,060.40
August FHA INSURANC 0.00 122.63 * 0.00 49.60 1,133.43 August HAZARD INS o.co 0.00 * 0.00 857.86 * 275.57
September   FHA   INSURANC   0.00   122.63 *   0.00   49.60 348.60 *
0.00 - 0.00   -o.co  ae2.3& *   -13.74
October FHA INSURANC 0.00 122.63 * 0.00 49.60 59.29 November FHA INSURANC 0.00   489.43
0.00 48.71 * 500.01

An asterisk (*) indicates a difference between the estimated and actual payments and disbursements. The letter E beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown.



O ROUNDPOINTMORTGAGE SERVICING CORPORATION

March 13, 2017

J. Rachel Scott
Atlanta Legal Aid Society
Senior Citizens Law Project
54      Ellis
Street  North
East Atlanta,
GA 30303

Loan:        1002638011
Client:      Katherine P. Robinson
Property:    4085 Weelaunee Road, Ellenwood, GA 30294

Dear J. Rachel Scott:

**Why RoundPoint Mortgage Servicing Corporation sent you this letter**

We are responding to your letter received on February 27, 2017 on behalf of Katherine Robinson. You request we correct the anticipated tax payments in the Escrow Analysis Statement dated November 17, 2016 and perform a new escrow analysis.

**What you need to know**

As of February 28, 2017, the tax information has been updated to reflect the following disbursements:

| Due Date | Amount Due |
| --- | --- |
| 09/2017 | $163.17 |
| 10 2017 | $163.17 |

A new escrow analysis was performed on March 1, 2017. Based on this analysis, there was an escrow overage in the amount of $425.64, which was disbursed to Ms. Robinson on March It 2017, check number 845326. The new monthly payment amount is $498.96 effective May 1, 2017. The escrow analysis should arrive to the mailing address on file within five to seven business days.

Important details

Based on instructions from DeKalb County, one annual tax payment in the amount of $362.34 was disbursed on September 7, 2016. On September 20, 2016, the enclosed Escrow Analysis Statement was performed reflecting county taxes paid in the amount of $362.34. Based on this analysis, the account had an escrow shortage in the amount of $396.99 and the new payment effective December 1, 2016 was $548.72. Once the escrow shortage was paid in full, the monthly payment amount would be $515.64.

On November 1, 2016, we were notified by DeKalb County the taxes due in 2017 would be semiannual installments. At this time, we updated the tax information in our system to reflect, one disbursement in September 2017, and the second disbursement in October 2017. However, due to a processing error, we incorrectly updated the amounts due as follows:

P.O. Box 19409 | Charlotte, North Carolina 28219-9409 | 877.426.6805
www.rpmservicing.com



# ROUNDPOINT

MORTGAGE SERVICING CORPORATION

| Due Date | Amount Due |
|----------|------------|
| 09/2017 | $362.34 |
| 10/2017 | $867.21 |

As a result, when the new escrow analysis was performed on November 17, 2016, it incorrectly projected upcoming taxes in the amount of $1,229.55 and did not adjust the payment to the amount of $515.64 in the previous escrow analysis. The second installment due in October 2017 was reflected on Table 1 Account Projections. However, it was for the incorrect amount of $867.21. We sincerely apologize for this error, and any frustration this may have caused Ms. Robinson.

Table 2 — Escrow Activity History reflects the actual escrow activity that occurred on the account. The actual payment reflected on the October row of Table 2 for the analysis dated November 17, 2016 is for the payment received in October 2016, not the payment that was due for October. Since the November 1, 2016 payment was received on October 18, 2016, the escrow contribution in the amount of $122.63 from this payment is shown in the October row of Table 2. The amount of $489.42 received on November 8, 2016 is reflected on the November row of Table 2.

How to contact us

It there is anything else we can do for you, please contact us at 877-426-8805. Our offices are open Monday through Friday from 8:00 a.m. until 9:00 p.m. Eastern Time and Saturday from 10:00 a.m. until 3:00 p.m. Eastern Time.

Enclosures

- Payment History
- Escrow Disbursement Amounts
- Escrow Analysis Statement dated September 301 2016
- Escrow Analysis Statement dated November 17, 2016

Sincerely,

David Hughes
Vice President
RoundPoint Mortgage Servicing Corporation

DBH/ac2

P.o. Box 19409 | Charlotte, North Carolina 28219-9409 | 877.426.8805
www.rpmservicing.com



**Rushmore Loan Manaagment Services**          MORTGAGE STATEMENT
Statement Date: 05/1513018
PO Box 814529
Deeas, TX 75381-4529

Visit our website at www.rushmorekn.com
Telephone 888-616-5400

Katherine P Robinson
C/O Atlanta Legal Aid Society Inc
54 Ellis St NE
Atlanta, GA 30303-2403

| Account Number | 4400546783 | Payment  Due  Date |
|---|---|---|
| 06101/2018 | | |
| Paymen& received  the | | dne not |
| Amount Due(') | | $501.96 |

payment is received for 08/17/2018, a $ | 6.43 late fee will be charged.

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, If you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal "ability with respect to the debt.

## Account information

| Property Address | 4085 WE-ELAUNEE RD |
| | ELLENWOOD GA, 30294 |

| | | |
|---|---|---|
| Outstanding Principal[2] | $70,877.12 Deferred Balance-CI | $0.00 |
| Interest Rate | 4.00000% | |
| Recoverable Advances[4] | | $0.00 |
| Prepayment Penalty | | NO |

## Explanation of Amount Due[5]

| | : liability with |
|---|---|
| Principal | |
| Interest | |
| Escrow (for Taxes and Insurance) | |
| Regular Monthly Payment | |
| Total Fees and Charges | $128.09 |
| Overdue Payments | $225.26 |
| Total Amount Due | $137.61 |
| Partial ment (Una ledi[5]) | $501.96 |
| | $0.00 |
| | $0.00 |
| | $501.96 |
| | $3.04 |

## Past Payments Breakdown

| | Paid Last Month | paid Year-to-Date |
|---|---|---|
| Principal | $127.67 | $514.16 |
| Interest | $236.68 | $949.32 |
| Escrow (Taxes and Insurance) | | $50.44 |
| | 313751 | $0.00 |
| Fees | $0.00 | |
| Partial Payment led | $3.04 | |
| Recoverable Advances[4] | 60.00 | $0.00 |
| Total | $505m | |

## Important information

(1) Partial Payments: Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the [mds wi7 than app69d to your mortgage.

(2) Deferred Balance: The amount ba2ance is deferred as part of the terms of a loan modification.

(3) Outstanding Principal: This is your Loan only, not the payoff amount.

(4) Recover-able Advance: Disbursements for servicing-related expenses(non-escrow openses) paid with gar-vicer-funds rather than escrow funds which are recovered from y=u, the borrower.

(5) Amount Due: IF YOU ARE IN FORECLOSURE OR BANKRUPTCY, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most amount due information, please contact us at the number listed on this statement.

## If You Are Experiencing Financial Difficulty

D=  you =n   Of HousT   For a   homeowner=hlp  counseling   your area, go to  ECO-583-4287. Rush=r=y Loan   Services dedicate b
Understand mortgage  outstanding loan  and Customer support tough and balues  ii customer=-lawredurdwt before in  We "get   With respect courtesy inc   We
payment= we  in d we recog6.es tha at tJmes economic changes make it  make your  payment. Wt erawatq= ou txri=ome=t to  664-2888168 &/assce
We  have met5s for you. We  you to  Any  may be having mor=age. We believe Chat open and  Is E hey Our  wrtch
 al out sentiomus to continue to  to  ben roke  obtain answers to ques59=s t4=: your

---

[Keep upper portion for your records]

Please maIE SQ that your payment reaches us by the due date.

| OAN NUM | DUE DATE | AMOUNT DUE | IF REC'D AFTER THIS DATE | LATE PMT AMOUNT | |
|---|---|---|---|---|---|
| 4400546783 | 06/01/2018 | $5C1.96 | | $516.53 | 5) |

### Amount Due[5]

| | |
|---|---|
| Due By 06101!2018: | $501.96 |
| $14.57 late fee be | after |
| Additional Principal | |
| Additional Escrow | |
| Total Amount Enclosed | |

Katherine P Robinson
C/O Atlanta Legal Aid Society

54    St NE
Atlanta, GA 30303

Make checks payable to:

Rushmore Loan Management Services LLC
P.o. Box 514707
Los Angeles, CA 900514707

Page 75 of 129

## ROUNDPOINT

MORTGAGE SERVICING CORPORATION

00512809000601201844005467830000051653000000501969

P.O. Box 19409
Charlotte, NC 28219-9409
Statement Enclosed

**Mortgage Billing Statem**
Statement Date 03/17/2

+ 0743334 00000214070 AP01  0945232  001

KATHERINE P ROBINSON C/O ATLANTA LEGAL AID
SOCIETY INC

54 ELLIS ST NE

ATLANTA GA 30303-2403

### YOUR PAYMENT INFORMATION

Loan Number:                                    10026380
Payment Due Date:        04/01/2017 Net Payment
Amount Due:      $572.57

If payment is not received by 04/16/2017, a late fee of $14.57 will be charged

877-426-8805 1 ServicingHelp@RoundPointMortgage.com

Property Address:
4085 WEELAUNEE RD
ELLENWOOD, GA 30294

| YOUR ACCOUNT INFORMATION | YOUR PAST PAYMENT BREAKDOWN | EXPLANATION OF AMOUNT DUE |
|---|---|---|
| Loan Due Date:        04/01/2017 | LAST MONTH   YTD | |
| Outstanding Principal:   $72,632.22 | Principal:   $121.84  $364.30 Interest: | Principal:        $122. |
| Interest  Rate:  4.000%   Prepayment | $242.51  $728.75 | Interest:        $242. |
| Penalty: No | Escrow (Taxes & Insurance):   $122.63   $367.89 | Escrow (Taxes and Insurance):   $208. |
| Escrow Balance:                    $44205 | Additional Monthly Amounts:   $0.00   $0.00 | Additional Monthly Amounts**:   $0. |
| Corporate Advance Balance:   $0.00 | Charges  and  Fees:  $0.00  $0.00  Partial  Payment | Regular Monthly Payment:   $572. |
| | (Unapplied)*: -$486.98 $0.00 Total:     $0.00 | Unpaid Late Charges: $0.00 Charges an |
| | $1,460.94 | Fees** $0.00 Past Due Payment(s): $0.00 |
| | **Important Information About Partial Payments** | Suspense Balance: $0.00 Net Total Amou |
| | Any partial payments that you make are not applied to your mortgage, | Due: $572.57 |
| | but instead are held in a separate suspense account. If you pay the | |
| | balance of a partial payment, the funds will then be applied to your | **See back |
| | mortgage. | |

### YOUR TRANSACTION ACTIVITY BETWEEN 03/17/2017 AND 03/17/2017

| Paid | | | | | Additional Monthly Payment | and Fees | Partial Payment (Unapplied) | Total |
|---|---|---|---|---|---|---|---|---|
| 03/17/2017 | Irregular Payment - Shut Escrow | $121.84 | $242.51 | $122.63 | $0.00 | $0.00 | -$48658 | $0.0 |
| 03/17/2017 | Charge | $0.00 | $0.00 | $0.00 | $0.00 | $14.57 | $0.00 | $0.0 |

### IMPORTANT INFORMATION

We've updated our policy on returned checks. Please read the Payment and Payoff Information section on the back of this statement to learn about changes which could potentially impact the fees assessed in the event that a payment is returned due to insufficient funds (NSß.

If you are experiencing financial difficulty, we're here to help Take a look at the back of your billing statement for information about mortgage counseling or assistance.

**SIGN UP FOR ONLINE BILLING STATEMENTS**

You can securely access your statements online at your prepared records

You will receive email notifications when your billing statement is being prepared

You can download your statements billing and save them for your convenience 24/7

# ROUNDPOåNT
MORTGAGE SERVICING CORPORATION
P.O. Box 19409, Charlotte, NC 28219-9409

**ESCROW**
**ANALYSIS**
**STATEMENT**

| | |
|---|---|
| Analysis Date: | 11/ |
| Loan Number: | *100263 |
| Mortgagor Name: | KATHERINE P ROBIN |
| Customer Service: | 877-426 |
| Fax: | 877-776 |
| Online Account Access: | www.rpmservicing |

000171
KATHERINE P ROBINSON
4085 WEELAUNEE RD
ELLENWOOD       GA 30294

RoundPoint Mortgage Servicing Corporatir-)ÜE (RcundPcint) reviews vour escrow accounV annua0y to determine your new monthly escrow payment. As you may know, we collect funds and hold them in your escrow account to pay escrowed items including propeny taxes, mortgage insurance and horneowner's insurance premiums.

The amount of your new monthly payment starting December 01, 2016:

| Payment Items | Current Payment | New Payment | Difference |
|---|---|---|---|
| Principal and Interest | $364.35 | $364.35 | $0.00 |
| Escrow | 184.37 | 209.87 | 25.50 |
| Shortage/Surplus | 0.00 | -1.65 | -1.65 |
| Total Payment | $548.72 | $572.57 | $23.85 |

- <u>Note:</u> ff you currently use a ihi,"d party bill pay service to make aukcmatic payments, please update the amount scheduled for submission in December to reflect the new payment listed above. If you are currently set up on ACH draft with RoundPoint, this new amount will automatically take effect with your December draft.

The amount we collect each month to be held in your escrow account may change based on increases or decreases to your escrowed items including property taxes, mortgage insurance and homeowner's insurance premiums. The information below compares the amounts RoundPoint expected to pay for each item this past year from your escrow account to the actual amounts that were paid. The difference column reflects the increase or decrease for each escrowed item.

| Escrowed Item | Anticipated Amounts Due | Actual Amounts Paid | Difference |
|---|---|---|---|
| COUNTY TAX | N/A | $1,229.55 | $1,229.55 |
| FHA INSURANC | N/A | $584.52 | $584.52 |
| HAZARD INS | N/A | $704.41 | $704.41 |
| Total Annual Escrow Payments | $2,212.44 | $2,518.48 | $306.04 |
| Monthly Escrow Payments | $184.37 | $209.87 | $25.50 |

According to the projections shown in Table 1 on the reverse side, your escrow account will rise above the minimum required balance of $322.32 in October. This means you have a surplus of $16.49 in your escrow account.

Since the surplus amount is less than $50.00 it will be prorated over 10 months and $1.65 will be subtracted from your monthly payment until the entire surplus amount has been credited towards your payment.

NOTE: A(n) 2 month cushion was used to determine the minimum required balance.

| Projected Low Escrow Balance | | Allowable Low Escrow Balance | | Surplus |
|---|---|---|---|---|
| $338.81 | minus | $322.32 | equals | $16.49 |

ESCROW OVERAGE SUMMARY                    ROUNDPOINT

FILED 10/1/2018 2:26 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## General Civil and Domestic Relations Case Filing Information Form

18CV9646

☒ Superior or ☐ State Court of ___DEKALB___ County      18PA1377

| For Clerk Use Only | |
|---|---|
| Date Filed __MM-DD-YYYY__ | Case Number _____ |

**Plaintiff(s)**
ROBINSON   KATHERINE   P

| Last | First | Middle I. | Suffix | Prefix |

| Last | First | Middle I. | Suffix | Prefix |

| Last | First | Middle I. | Suffix | Prefix |

| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**
ALTERRA HOME LOANS,  VENTA FINANCIAL GROUP INC

| Last | First | Middle I. | Suffix | Prefix |

FIRST GUARANTY MORTGAGE CORP

| Last | First | Middle I. | Suffix | Prefix |

ROUNDPOINT MORTGAGE SERVICING CORP

| Last | First | Middle I. | Suffix | Prefix |

RUSHMORE LOAN MANAGEMENT SERVICES

| Last | First | Middle I. | Suffix | Prefix |

Plaintiff's Attorney _____   Bar Number _____   Self-Represented ☒

### Check One Case Type in One Box

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☒ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☒ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
Case Number             Case Number

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
I am a senior citizen who is disabled and has a level of visual impairment accommodations may be needed in the future.

Version 1.1.18

## General Civil and Domestic Relations Case Filing Information Form

18CV9646

☒ Superior or ☐ State Court of __DEKALB_____ County

18PA1377

| For Clerk Use Only | |
|---|---|
| Date Filed | Case Number |
| **MM-DD-YYYY** | |

**Plaintiff(s)**

| ROBINSON | KATHERINE | P | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

| ALTERRA HOME LOANS, VENTA FINANCIAL GROUP INC | | | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| FIRST GUARANTY MORTGAGE CORP | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| ROUNDPOINT MORTGAGE SERVICING CORP | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| RUSHMORE LOAN MANAGEMENT SERVICES | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _____ **Bar Number** _____ **Self-Represented** ☒

### Check One Case Type in One Box

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☒ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____        _____
Case Number                          Case Number

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
I am a senior citizen who is disabled and has a level of visual impairment accommodations may be needed in the future.
_____

Version 1.1.18

FILED 10/1/2018 2:26 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

IN THE SUPERIOR _____ COURT OF DEKALB _____ COUNTY
STATE OF GEORGIA

)
KATHERINE P ROBINSON )
Plaintiff, )
)
vs )
) Civil Action File No. _____    18CV9646
Alterra HOME LOANS, FIRST )
GUARANTY MORTGAGE CORPORATION, )
ROUNDPOINT MORTGAGE SERVICING )
CORPORATION, RUSHMORE )            18PA1377
LOAN MANAGEMENT SERVICES )
VENTA FINANCIAL GROUP, INC., )
Defendants, )

## AFFIDAVIT OF ELIGIBILITY TO PROCEED IN FORMA PAUPERIS

I am the __X_ Plaintiff ____ Defendant in this case.  I am filing this Affidavit of
Poverty under OCGA § 9-15-2, to ask that I be relieved from paying the court costs.  I
hereby swear or affirm, before a notary public, that the following information is true:

1.

I, __KATHERINE P ROBINSON_____, swear or
affirm that I am the _____PLAINTIFF_____ (plaintiff or defendant) in the
above-styled case, and that because of my indigent status, I am unable to pay the costs of
this proceeding.  I further swear that the responses which I have made to questions and
instructions on this statement relating to my ability to pay the cost of proceeding in this
action are true.

_Katherine R Robinson_
Party Proceeding in Forma Pauperis

Sworn to and subscribed before me this 25th day of SEPTEMBER, 20 18.

_____
Notary Public

☑ Approved / ☐ Denied

_____
Judge of Superior Court

_____ County

1

## A.  IDENTIFYING INFORMATION

1. Name __ROBINSON__          __KATHERINE__     __P__
          Last                 First            Middle

2. Social Security Number  033 - 40 - 3603

3. Current Address 4085 WEELAUNEE ROAD
                   Number and Street
   ____ELLENWOOD____          ____GEORGIA____    __30294__
   Apt. #, if any      City            State        Zip Code

   _DEKALB_____
   County

4. Home telephone  _404-212-1064_
5. Work or other phone _____
6. Marital Status:  ☐ Married; ☐ Single; ☐ Divorced; ☒ Widowed.

## B.  DEPENDENTS/DEPENDENCY

1. How many people, not including yourself, do you support? _____0_____

List Below                                    yes/no
Name                        Age   Relationship   Support Totally?

_____
_____
_____
_____
_____

2. Is there any person (parents, husband) who is under a legal duty to support you? _NO_

      If yes, give the name of this person and explain.
_____
_____
_____

## C.  PUBLIC ASSISTANCE
Do you currently receive either Aid to Families of Dependant Children (AFDC) or
Supplemental Security Income (SSI)?  ___X_Yes ; _____ No
If yes, list the type of assistance and amount.
                           *** SSDI    ; $    871.00

, 2

————————————————————————————— ; $ ————————————————

TOTAL
$ _____ 871.00 _____ Medicaid Card _____ YES _____ Month and Year Issued _ NOV 2015 _

> NOTE:  If you answer "yes" to the above question, the court may wish to verify the information you have given.  Although the court will keep this information confidential, by completing this question you authorize the release of information from the Social Security Administration and/or the Department of Family and Children's Services.

D.  MONTHLY INCOME

1.  Do you have a job or jobs? _____ Yes ; _ X _ No

List name and phone number(s) of employer(s), if any.

| Employer | Phone | Monthly Wages |
|---|---|---|
|  |  |  |
|  |  |  |

Per month total for all employers combined:  $ _____ 0 _____

2.  Do you have any other regular income? _____ Yes ; _ x _ No

> If yes, list below.  Include all salary or wages and social security benefits that are not listed above plus all workers compensation, pension payments, insurance benefits, alimony or child support payments, disability payments, unemployment payments, and any other income that you receive on a regular basis.

| Type of Income/ Source | Monthly Amount |
|---|---|
|  |  |
|  |  |

E.  ASSETS

1.  How much cash do you currently have available to you, including your checking and savings accounts?

| Name of Financial Institution | Account Number | Amount |
|---|---|---|
| WELLS FARGO | 2281886032 | 99.03 |
|  |  |  |

3

Amount of cash not in an account: $_____0_____

Total for all amounts listed in E.1.: $__99.03_____

2.  Do you own a car, truck, van or other motor vehicle?  __X__ Yes ; _____ No

If yes, list below:

| Description | Approximate value | Amount owed on vehicle |
|---|---|---|
| 2002 FORD EXPLORER | 250.00 | 0.00 |

Total: $__250.00_____

3.  Do you own a home or other real estate?  __X__ Yes ; _____ No

If yes, list below:

| Description | Approximate value | Amount owed on mortgage |
|---|---|---|
| 4085 WEELAUNEE RD;ELLENWOOD | 76,312.00 | 70800.00  DISPUTED |

4.  Do you own any valuable items of personal property such as TV sets, stereos, stocks
or bonds, jewelry, furs, or other items?  (Do not include clothing, furniture or household
appliances such as stoves or refrigerators.) _____ Yes ; __x__ No

If yes, list below.

| Description | Value |
|---|---|
| | |

F.  LIABILITIES

1.  List all debts owed over $100 and all payments which you must make on a regular
basis below.  Include house payments, rent, child support or alimony payments, charge
account payments, loan payments and any other payment which you must make on a
regular basis.  Do not include ordinary expenses such as food, clothing, utility bills and
similar items.

| Source of Debt | Total Amount Owed | Monthly Payment Amount |
|---|---|---|
| | | |

4

| Source of Debt | Total Amount Owed | Monthly Payment Amount |
|---|---|---|
| BANK OF AMERICA | 6,289.71 | $75.00   RR |
| SUNCOAST CREDIT | $5,913.77   RR | $75.00   RR |

2. Do you have any unusual or extraordinary expenses or circumstances such as large medical bills which are not listed above? _____ Yes ; __X__ No
If yes, explain below.

3. Are there any other circumstances which make you unable to pay the costs of this action and are not fully explained above: (e.g. disability, illness, etc.)
__X__ Yes ; _____ No

If yes, use the space below to explain your circumstances. Include any facts which will help the court to determine whether you can afford to pay the required fee(s).

DISABILITY

I am 66 yrs with glaucoma, macrodegeneration; cervical and lumbar spine difficulties C2 thru C7 has plates and screws and L4-S1 have yet to be operated on I use a scooter (prescribed) and have had one since 1986. No one wants to hire me right now with my other medical problems

*RPR*

5

**IN THE SUPERIOR COURT OF DEKALB COUNTY**

**STATE OF GEORGIA**

Katherine P. Robinson
_____
PLAINTIFF                                              **CIVIL ACTION FILE NUMBER**

vs. Alterra Home Loans, First Guaranty Mortgage Corp.
Roundpoint Mortgage Servicing Corporation, Rushmore
Loan Management Services  Venta Financial
Group, Inc.
_____                           18PA1377
DEFENDANT

### 4ᵗʰ STANDING ORDER REGARDING IN FORMA PAUPERIS FILINGS

It appears to the Court that the orderly conduct of its business requires the establishment of a further standing order for Poverty Affidavits, and the same having been developed and adopted by the Court, it is therefore **ORDERED** that any litigant who asserts an inability to pay any fees or costs which would normally be assessed to pursue a court action shall complete a detailed Affidavit of Poverty as required by OCGA §9-15-2.

The following documents must accompany the Affidavit of Poverty: a copy of the party's most recent bank statement and copies of the two most recent paychecks or disability checks.  In lieu of a bank statement, a copy of a utility bill, cable bill, and cell phone bill can be provided.  **The party presenting the documents described above shall strike out the full date of birth and social security number and all but the last four digits of any account numbers appearing on the documents.**  If one of the required documents cannot be included, an explanation for its absence must be provided in writing.

The Affidavit of Poverty and the supporting documents listed above should be attached to the unfiled petition or complaint and submitted to the Office of the Clerk of Superior Court.  Staff in that office will forward all of the information to chambers for judicial review.  Affidavits of Poverty without all of the required supporting documentation may not be considered.

**IT IS SO ORDERED.**

This 14ᵗʰ day of March , 2018.

Honorable Courtney L. Johnson
Chief and Administrative Judge
DeKalb County Superior Court
Stone Mountain Judicial Circuit

**IN THE SUPERIOR COURT OF DEKALB COUNTY**

**STATE OF GEORGIA**

Katherine P. Robinson                    *

**PLAINTIFF**                                              **CIVIL ACTION FILE NUMBER**

                                                                    *

vs. Alterra Home Loans, First Guaranty
Mortgage Corporation, RoundPoint Mortgage *
Servicing Corporation, Rushmore Loan Management
Venta Financial Group, Inc.          services, *
**DEFENDANT**                               *        18PA1377

## 2nd STANDING ORDER REGARDING IN FORMA PAUPERIS FILINGS

It appears to the Court that the orderly conduct of its business requires the establishment of a

further standing order for poverty affidavits, and the same having been developed and adopted by the

Court, it is therefore:

**ORDERED** that upon filing of a *Poverty Affidavit* executed by a party, as provided under OCGA

9-15-2(a)(1), the filing party shall have thirty (30) days from the date the affidavit is submitted to retrieve

the documents from the Clerk of Superior Court. If the documents are not retrieved within the time

allotted, the Clerk shall have the authority to dispose of said documents and the case shall be closed.

**IT IS SO ORDERED.**

This ___2nd___ day of ___February___, 2018.

Honorable Courtney L. Johnson
Chief and Administrative Judge
DeKalb County Superior Court
Stone Mountain Judicial Circuit

FILED 9/27/2018 3:56 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

STATE OF GEORGIA                18PA1377
COUNTY OF  DEKALB

## AFFIDAVIT AND MOTION TO PROCEED IN FORMA PAUPERIS

I,  KATHERINE P. ROBINSON           , the undersigned, having been
duly sworn, hereby state as follows:

That I am the plaintiff in the above and foregoing case and thereby responsible
for payment of fees and court costs.

I am presently    66    years of age and have been unable to engage in
substantial gainful employment since       1978       .

My total monthly income is as follows:   $871.00   .

I do not own any assets, bank accounts, stocks, bonds or other valuable
property.

If I am required to pay the costs of this case I will not be able to prosecute my
case due to lack of funds.

I believe and state that I have a meritorious claim and desire to proceed in forma
pauperis.

**SWORN TO** and **SUBSCRIBED BEFORE ME,**

this  24th  day of  September          , 20  18  .


_Monica M. Williams_
**NOTARY PUBLIC**

MONICA M. WILLIAMS
NOTARY PUBLIC
STATE OF GEORGIA
My Commission Expires:        MY COMMISSION EXPIRES
DECEMBER 27, 2018

FILED 10/1/2018 2:26 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## DEKALB COUNTY SUPERIOR COURT
## STATE OF GEORGIA

Katherine P. Robinson
_____,
Plaintiff,

vs. Alterra Home Loans, First Guaranty Mortgage
Corporation, RoundPoint Mortgage Servicing Corp,
Rushmore Loan Management Ser. Venta Financial Group, Inc.
_____
Defendant.

Civil Action

Case Number       18CV9646


                  18PA1377

## DOMESTIC RELATIONS FINANCIAL AFFIDAVIT

| (1) Your Name: Katherine P. Robinson | | Your Age: 66 |
|---|---|---|
| Spouse's Name: | | Spouse's Age: |
| Date of Marriage: | Date of Separation: | |

Names and year of birth of children for whom support is to be determined in this action:

| Name | Year of Birth | Resides with |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

Names and year of birth of your other children:

| Name | Year of Birth | Resides with |
|---|---|---|
| | | |
| | | |

**(2) SUMMARY OF YOUR INCOME AND NEEDS:** *(fill out this part after you complete pages 2-5)*

| | |
|---|---|
| (A) Gross Monthly Income *(from Item 3A below)* | $ 871.00 |
| (B) Net Monthly Income *(from Item 3B below)* | $ 0.00 |
| (C) Average Monthly Expenses *(Item 5A below)* | $ 220.00 |
| Monthly Payments to Creditors *(Item 5B below)* | $ 150.00 |
| Total Monthly Expenses & Payments to Creditors *(Item 5C below)* | $ 872.00 |

**(3) (A) YOUR GROSS MONTHLY INCOME:** *(Complete this section <u>or</u> attach Child Support Schedule A. All income must be entered based on monthly average regardless of date of receipt. Where applicable, income should be annualized.)*

| | |
|---|---|
| Salary or Wages — *ATTACH COPIES OF 2 MOST RECENT WAGE STATEMENTS* | $ |
| Commissions, Fees & Tips | $ |
| Income from self-employment, partnership, close corporations and independent contracts *(gross receipts minus ordinary and necessary expenses required to produce income)* *ATTACH SHEET ITEMIZING YOUR CALCULATIONS* | $ |
| Rental income *(gross receipts minus ordinary and necessary expenses required to produce income)* *ATTACH SHEET ITEMIZING YOUR CALCULATIONS* | $ |
| Bonuses | $ |
| Overtime Payments | $ |
| Severance Pay | $ |
| Recurring Income from Pensions or Retirement Plans | $ |
| Interest and Dividends | $ |
| Trust income | $ |
| Income from Annuities | $ |
| Capital Gains | $ |
| Social Security Disability or Retirement Benefits | $ 871.00 |
| Worker's Compensation Benefits | $ |
| Unemployment Benefits | $ |
| Judgments from Personal Injury or Other Civil Cases | $ |
| Gifts (cash or other gifts that can be converted to cash) | $ |
| Prizes & Lottery Winnings | $ |
| Alimony and maintenance from persons not in this case | $ |
| Assets which are used for support of family | $ |
| Fringe Benefits (if significantly reduce living expenses) | $ |
| Any Other Income *(Do not include means-tested public assistance, such as TANF or food stamps.)* | $ |
| **TOTAL Gross Monthly Income** *(also write in 2A on page one)* | $ 871.00 |
| **(3)(B) Net Monthly Income From Employment** *(deducting only state and federal taxes and FICA) (also write in 2B on page one)* | $ 0.00 |

Domestic Relations Financial Affidavit – rev. January 8, 2007 – Tech. Rev. 10-2015
Provided by the DeKalb County Superior Court and the Atlanta Legal Aid Society

Page 2 of 6

| Your Pay Period (*i.e.*, monthly, weekly, *etc.*): | Number of Exemptions Claimed by You for Tax Purposes: |
|---|---|
|  |  |

**(4) ASSETS**

*(List all assets here, including both non-marital and marital property. If you claim or agree that all or part of an asset is non-marital, indicate the non-marital portion under the appropriate spouse's column and state the amount and the basis: pre-marital, gift, inheritance, source of funds, etc. The total value of each asset must be listed in the "value" column. "Value" means what you feel the item of property would be worth if it were offered for sale.)*

| Description | Value | Separate Asset of Husband | Separate Asset of Wife | Basis of the Claim (*pre-marital, gift, inheritance, etc.*) |
|---|---|---|---|---|
| Cash | $ | $ | $ | |
| Stocks, Bonds | $ | $ | $ | |
| CD's / Money Market Accounts | $ | $ | $ | |
| Bank Accounts *(list each account below)*: | | | | |
| (1) | $ 99.03 | $ | $ | |
| (2) | $ | $ | $ | |
| (3) | $ | $ | $ | |
| Retirement Pensions, 401(k), IRA or Profit-Sharing | $ | $ | $ | |
| Money Owed to You (or Spouse) | $ 6,289 71 | $ | $ | Agreement to Pay |
| Tax Refund Owed to You | $ | $ | $ | |
| Real Estate (list properties & mortgages): | | | | |
| Home | $ 76,317 00 | $ | $ | |
| Debt owed on Home | DISPUTED $ 70,362. 00 | | | |
| Other Real Estate | $ | $ | $ | |
| Debt owed on Other Real Estate | $ | | | |
| Automobiles / Vehicles (list vehicles & amounts owed on each one): | | | | |
| (1) 2002 Ford Explorer | $ 250.00 | $ | $ | |
| Debt owed on Vehicle (1) | $ | | | |
| (2) | $ | $ | $ | |
| Debt owed on Vehicle (2) | $ | | | |

Domestic Relations Financial Affidavit - rev. January 8, 2007 - Tech. Rev. 10-2015
Provided by the DeKalb County Superior Court and the Atlanta Legal Aid Society

Page 3 of 6

| (4) ASSETS  *(continued)*  <br><br>Description | Value | Separate Asset of Husband | Separate Asset of Wife | Basis of the Claim *(pre-marital, gift, inheritance, etc.)* |
|---|---|---|---|---|
| Life Insurance (net cash value) | $ | $ | $ | |
| Furniture / Furnishings | $ 1,000.00 | $ | $ | |
| Jewelry | $ | $ | $ | |
| Collectibles | $ | $ | $ | |
| Other Assets *(specify)*: | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| **TOTAL ASSETS** | $ 1,250.00 | $ | $ | |

## (5)(A)   AVERAGE MONTHLY EXPENSES FOR YOU AND YOUR HOUSEHOLD

### HOUSEHOLD EXPENSES

| | | | |
|---|---|---|---|
| Mortgage or Rent Payments | $ 501.96 | Gas | $ |
| Property taxes | $ | Repairs & Maintenance | $ |
| Homeowner's / Renter's Insurance | $ | Lawn Care | $ |
| Electricity | $ 75.00 | Pest Control | $ |
| Water | $ 10.00 | Cable TV / Internet Access | $ 10.00 |
| Garbage & Sewer | $ | Misc. Household & Grocery Items | $ 20.00 |
| Telephones | | Meals Outside Home | $ |
| Residential Lines | $ 30.00 | Other *(specify)* | $ |
| Cellular Telephones | $ | | $ |

### AUTOMOTIVE

| | | | |
|---|---|---|---|
| Gasoline & Oil | $ | Auto Tags / Registration / License | $ |
| Repairs & Maintenance | $ | Insurance | $ 75.00 |

### OTHER VEHICLES (boats, trailers, RVs, etc.)

| | | | |
|---|---|---|---|
| Gasoline & Oil | $ | Tags / Registration / License | $ |
| Repairs & Maintenance | $ | Insurance | $ |

Domestic Relations Financial Affidavit - rev. *January 8, 2007 - Tech. Rev. 10-2015*  <br>Provided by the DeKalb County Superior Court and the Atlanta Legal Aid Society

Page 4 of 6

| CHILDREN'S EXPENSES | | | |
|---|---|---|---|
| Child Care (total monthly cost) | $ | Allowance | $ |
| School Tuition | $ | Children's Clothing | $ |
| Tutoring | $ | Diapers | $ |
| Private lessons (e.g., music, dance) | $ | Medical, Dental, Prescriptions (out-of-pocket uncovered expenses) | $ |
| School Supplies / Expenses | $ | Grooming / Hygiene | $ |
| Lunch Money | $ | Gifts from children to others | $ |
| Other Educational Expenses (list type & amount): | | Entertainment | $ |
| _____ | $ | Activities (including extra-curricular, school, religious, cultural, etc.) | $ |
| _____ | $ | Summer Camps | $ |

| OTHER INSURANCE | | | |
|---|---|---|---|
| Health Insurance | $ | Life Insurance | $ |
| Children's portion: | $ | Relationship of Beneficiary: | |
| Dental Insurance | $ | Disability Insurance | $ |
| Children's portion: | $ | Other Insurance (specify) | $ |
| Vision Insurance | $ | | $ |
| Children's portion: | $ | | $ |

| YOUR OTHER EXPENSES | | | |
|---|---|---|---|
| Dry Cleaning & Laundry | $ | Publications | $ |
| Clothing | $ | Dues, Clubs | $ |
| Medical / Dental / Prescription (out-of-pocket uncovered expenses) | $ | Religious & Charities | $ |
| Your Gifts (special holidays) | $ | Pet expenses | $ |
| Entertainment | $ | Alimony Paid to Former Spouse | $ |
| Recreational Expenses (e.g., fitness) | $ | Child Support Paid for other children | $ |
| Vacations | $ | Date of initial CS order: | |
| Travel Expenses for Visitation | $ | Other (attach sheet to list) | $ |
| **TOTAL ABOVE MONTHLY EXPENSES** (also write on first line of 2C on page one) | | | $ 220.⁰⁰ |

Domestic Relations Financial Affidavit – rev. January 8, 2007 – Tech. Rev. 10-2015
Provided by the DeKalb County Superior Court and the Atlanta Legal Aid Society

Page 5 of 6

**(5)(B)  YOUR PAYMENTS & DEBTS TO CREDITORS**

| To Whom | Balance Due | Monthly Payments | *(Please check one)* | | |
|---|---|---|---|---|---|
| | | | Joint | Husband | Wife |
| *Suncoast Schools Credit Union* | $5,913.77 | $75.00 | | | |
| *Bank of America* | $6,289.71 | $75.00 | | | |
| | $ | $ | | | |
| | $ | $ | | | |
| | $ | $ | | | |
| | $ | $ | | | |

| **Total Monthly Payments to Creditors** *(also write this total on line 2 of 2C on page one)* | $ 150.00 |
|---|---|

**(5)(C)TOTAL MONTHLY EXPENSES**
*(Total Expenses from final line on page 5 + Total Monthly Payments to Creditors above)*
*(also write this total on line 3 of 2C on page one)* — $ 872.00

---

*Katherine Patricia Robinson*

☒ Plaintiff  ☐ Defendant      *Pro se*
*(Sign in front of notary public.)*

Name: Katherine Patricia Robinson

Address: 4085 Weelaunee Rd.

Ellenwood, GA 30294

Daytime Phone: (404   ) 212 - 1064

Subscribed and sworn before me on

September 26 , 2018 .

*Daina Cooley*
Notary Public

DAINA COOLEY
MY COMMISSION EXPIRES
NOTARY
PUBLIC
SEPTEMBER 7, 2020
DEKALB COUNTY, GEORGIA

*pro se DR 8 Affidavit for new USCR24 approved corrected 2 - Tech rev 2015-10.wpd*

---

Domestic Relations Financial Affidavit - rev. January 8, 2007 - Tech. Rev. 10-2015
Provided by the DeKalb County Superior Court and the Atlanta Legal Aid Society

Page 6 of 6

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

KATHERINE P. ROBINSON

**Case No.:** 18CV9646

18PA1377

**Plaintiff**

**VS**

ALTERRA HOME LOANS
ROUNDPOINT MORTGAGE SERVICING CORP
RUSHMORE LOAN MANAGEMENT SERVICE
FIRST GRARANTY MORTGAGE CORP
VENTA FINANCIAL GROUP INC

**Defendant**

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT(S):**

You are hereby summoned and required to file electronically with the Clerk of said court at
https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons
upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint.

This _____1_____ day of _____october_____, 20__18__.

Honorable Debra DeBerry
Clerk of Superior Court

By_____B Wayne Scott_____

Deputy Clerk

<u>E-Filing and E-Service</u>

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the
parties must file all documents electronically through eFileGA unless expressly exempted under the Rule.  All orders and notices from the Court will
be electronically filed and served through eFileGA.  The parties must register for an eFileGA account, link their service contact information with the
case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes.  To
access eFileGA, please go to http://www.odyssevefilega.com/

Instructions:  Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SH

Civil Action No. __18 CV 9646-b__

Date Filed __Nov 7, 2018__

Superior Court ☒
State Court ☐
Georgia, DeKalb County

Katherine P. Robinson

**Attorney's Address**

Katherine R Robinson
4085 Weelaunee Rd
Ellenwood, GA 30294

**Plaintiff**

vs.

Rushmore Loan Management Services LLC

**Name and Address of Party to be Served**

Rushmore Loan Management Services

1755 Whittington Place  Ste. 400

Dallas, TX  75234

FAX: 949-341-2242
e-mail servicing @ rushmorelm.com

Rec 11/15/2018 11:34A

**Defendant**

**Garnishee**

**MARSHAL/SHERIFF'S ENTRY OF SERVICE**

**PERSONAL** ☐

I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐

Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

11/16/18

*SHIRLEY JOHNSON*
*NOTARY PUBLIC*
*STATE OF TEXAS*
*129053335*
*10-07-2020*

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant _Return To Court Will Not Accept at this Location_ not to be found in the jurisdiction of this Court. _Has To Go To California -_

This __16__ day of __Nov__, 2018.

Fee $80.00

_#3710_
**DEPUTY**

DALLAS COUNTY
CONSTABLE PCT. 3
2018 NOV 15 AM 11: 34

SHERIFF DOCKET _____  PAGE _____

**BEN ADAMCIK**
CONSTABLE PCT. 3,
DALLAS COUNTY



SH

# OFFICE OF THE SHERIFF
## CLARK COUNTY DETENTION
## CIVIL PROCESS SECTION

KATHERINE ROBINSON )
)
**PLAINTIFF** )  CASE No. 18CV9646
Vs )  SHERIFF CIVIL NO.: 18008276
ALTERRA HOME LONES )
)
**DEFENDANT** )  **AFFIDAVIT OF SERVICE**

**STATE OF NEVADA** }
} ss:
**COUNTY OF CLARK** }

       **JACOB MALONE**, being first duly sworn, deposes and says: That he is, and was at all times hereinafter mentioned, a duly appointed, qualified and acting Deputy Sheriff in and for the County of Clark, State of Nevada, a citizen of the United States, over the age of twenty-one years and not a party to, nor interested in, the above entitled action; that on **11/20/2018**, at the hour of **12:10 PM**. affiant as such Deputy Sheriff served a copy/copies of **SUMMONS AND AMENDED COMPLAINT** issued in the above entitled action upon ALTERRA HOME LONES the defendant **ALTERRA HOME LONES** named therein, by delivering to and leaving with **ROSALINA NARVAEZ** at **ALTERRA HOME LONES**, at **350 SOUTH RAMPART BOULEVARD SUITE 310 LAS VEGAS, NV 89145** within the County of Clark, State of Nevada, copy/copies of **SUMMONS AND AMENDED COMPLAINT**.

**DATED: November 21, 2018.**

Joseph M. Lombardo, Sheriff

**SUBSCRIBED AND SWORN** to me before me this

By: _____ 9586

_____ **JACOB MALONE**

21st day of November 20 18.  Deputy Sheriff

_____
NOTARY PUBLIC in and for said County & State

TAMI BRAVO
Notary Public State of Nevada
No. 97-0041-1
My Appt. Exp. January 29, 2021

**301 E. Clark Ave. #100     Las Vegas, NV 89101     (702) 455-5400**

Civil Action No. _18CV9646-6_

Date Filed _NOV 7, 2018_

Superior Court ☒
State Court ☐
Georgia, DeKalb County

Katherine P. Robinson

**Plaintiff**

Attorney's Address

Katherine P. Robinson
4085 Weelaunee Rd
Ellenwood, GA 30294

VS.

Alterra Home Loans

Name and Address of Party to be Served

Alterra Home Loans
850 So Rampart Blvd
Las Vegas, NV 89145
e-mail: BSlayton@VFG.com

**Defendant**

**Garnishee**

RECEIVED
CLARK COUNTY SHERIFF
2018 NOV 15  P 2: 58

## MARSHAL/SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

☐ Delivered same into hands of _____ described as follows

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

Served the defendant _____ a corporation

☐ by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _____ day of _____, 20____.

_____
**DEPUTY**

SHERIFF DOCKET _____   PAGE _____